# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### April 3, 2002 Session

## MICHAEL EUGENE SAMPLE, ET AL. v. STATE OF TENNESSEE

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Shelby County**
**No. P-14252    Bernie Weinman, Judge**

---

**No. W1999-01202-SC-R11-PC - Filed August 2, 2002**

---

We granted review in this post-conviction capital case to address two issues:  (1) whether the trial court properly ruled that the petitioner's claim that the prosecution suppressed exculpatory evidence was barred by the statute of limitations; and (2) whether the trial court properly determined that the jury's reliance on the felony murder aggravating circumstance in imposing a death sentence for the offense of felony murder in violation of article I, § 16 of the Tennessee Constitution was harmless error beyond a reasonable doubt.  The Court of Criminal Appeals affirmed the denial of post-conviction relief.

After carefully reviewing the record and applicable authority, we hold that our decision in Wright v. State, 987 S.W.2d 26 (Tenn. 1999), did not create a per se rule requiring the dismissal of all late-arising suppression of exculpatory evidence claims, and that the record in this case preponderates against the trial court's determination that the petitioner's liberty interest in raising such an issue was outweighed by the State's interest in finality.  We therefore remand for further proceedings on this claim.  We further hold that the violation of article I, § 16 of the Tennessee Constitution under the present facts in the record was harmless error beyond a reasonable doubt under State v. Howell, 868 S.W.2d 238 (Tenn. 1993).  We therefore reverse the Court of Criminal Appeals' judgment and remand to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Reversed and Case Remanded to Trial Court**

E. RILEY ANDERSON, J., delivered the opinion of the court, in which ADOLPHO A. BIRCH, JR., and JANICE M. HOLDER, JJ., joined.  FRANK F. DROWOTA, III, C.J., filed a concurring opinion.  WILLIAM M. BARKER, J., filed a concurring and dissenting opinion.

David M. Eldridge, Knoxville, Tennessee, and Harry R. Reinhart, Columbus, Ohio, for the appellant, Michael Eugene Sample.

Michael E. Moore, Solicitor General; Jennifer L. Smith and Erik W. Daab, Assistant Attorneys General; William L. Gibbons, District Attorney General; and Reginald Henderson and John W. Campbell, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**BACKGROUND**

Trial and Direct Appeal

The petitioner, Michael Eugene Sample, and a co-defendant, Larry McKay, were convicted of felony murder and sentenced to death for the 1981 killing of two men during an armed robbery in Memphis, Tennessee. To place the issues raised in this appeal in the appropriate context, we will briefly summarize the evidence from the trial and sentencing.

Melvin Wallace, Jr., testified that on August 29, 1981, he entered the L & G Sundry Store and saw two employees, Benjamin Cooke and Steve Jones, being held at gunpoint. Wallace tried to flee, but was shot in the leg by the petitioner, Michael Sample. While lying on the floor, Wallace heard Sample demand money and threaten to kill everyone, and he saw McKay shoot Cooke. When Sample realized that Wallace was still alive, he shot him in the back; Sample then put a gun to Wallace's head, but it misfired. Wallace and Sample engaged in a struggle, and Wallace lost consciousness when the gun fired near his head. Wallace survived the shootings, but Cooke and Jones were killed.

The day after the offenses, police officers apprehended Sample and McKay and found a .32 caliber handgun in their car. Bullets fired from this weapon matched those found in all three victims. Two days after the offenses, Wallace identified Sample and McKay from a lineup. At trial, Wallace again identified Sample and McKay as the persons who committed the offenses. A second witness, Charles Rice, testified that he fled from the scene when he saw the robbery in progress; he likewise identified Sample and McKay as the perpetrators. Both Sample and McKay were convicted of two counts of felony murder.

At a sentencing hearing to determine punishment, Sample introduced mitigating evidence that he was an "exceptionally good" and "very conscientious" employee. Several family members testified about Sample's work history, character, and qualities as a husband, father, and son-in-law. Sample's mother testified that he was a good son and asked the jury to spare his life. Sample testified that he did not commit these crimes and asked the jury to spare his life for the sake of his son and wife.

The jury sentenced Sample to death based on three aggravating circumstances: that he created a great risk of death to two or more persons other than the victims who were murdered; that he committed the murder to avoid, interfere with or prevent a lawful arrest or prosecution; and that the murders were committed in the course of committing a felony. See Tenn. Code Ann. § 39-2404(i)(3),

(6), (7) (Supp. 1981).[1]  The convictions and sentences were upheld on direct appeal.  State v. McKay, 680 S.W.2d 447 (Tenn. 1984), cert. denied, 470 U.S. 1034 (1985).

Post-Conviction Proceedings

The present action for post-conviction relief was filed in January of 1995.[2]  The petition alleged, among other grounds, that the prosecution violated his rights to due process and a fair trial under the Fourteenth Amendment to the United States Constitution and article I, § 8 of the Tennessee Constitution by suppressing exculpatory evidence.  See Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963); Johnson v. State, 38 S.W.3d 52 (Tenn. 2001).  The petition also alleged that the jury's reliance upon the felony murder aggravating circumstance violated article I, § 16 of the Tennessee Constitution.  See State v. Middlebrooks, 840 S.W.2d 317 (Tenn. 1992).

The trial court initially dismissed the post-conviction petition without requiring the State to file an answer, conducting an evidentiary hearing, or addressing the merits of the issues raised.  When the dismissal was appealed, the Court of Criminal Appeals recognized that the petition had been filed after the expiration of the three-year statute of limitations then applicable to post-conviction cases, see Tenn. Code Ann. § 40-30-102 (1990), but concluded that the trial court erred in summarily dismissing the petition without determining whether the exculpatory evidence issue should be heard as a "later-arising" claim.  The Court of Criminal Appeals further held that the trial court erred in failing to determine whether the violation of article I, § 16 of the Tennessee Constitution was harmless error beyond a reasonable doubt.  Sample v. State, Nos. 02C01-9505-CR-000131 and 02C01-9505-CR-00139, 1996 Tenn. Crim. App. LEXIS 597 (Sept. 30, 1996).

On remand, the trial court determined that consideration of the exculpatory evidence issue was barred because the petition had been filed after the three-year statute of limitations.  The trial court cited Wright v. State, 987 S.W.2d 26 (Tenn. 1999), in which this Court held that a late-arising exculpatory evidence claim was properly rejected because the petitioner had not been denied a reasonable opportunity to litigate the issue and the petitioner's liberty interests in raising the issue were outweighed by the State's interest in finality of judgments.  The trial court also found that the violation of article I, § 16 of the Tennessee Constitution was harmless beyond a reasonable doubt.

On appeal following the remand, the Court of Criminal Appeals affirmed the trial court's conclusion that the exculpatory evidence issue was barred by the statute of limitations, yet expressed

---

[1]     Present versions of these aggravating circumstances are found in Tenn. Code Ann. § 39-13-204(i)(3), (6), (7) (1997 & Supp. 2001).

[2]     The trial court found that the petitioner has filed six petitions for post-conviction relief, all of which have been denied.  Our records indicate that the following post-conviction suits were denied and also affirmed on appeal: McKay & Sample v. State, No. 25, 1989 Tenn. Crim. App. LEXIS 153 (March 1, 1989); Sample & McKay v. State, No. 02C01-9104-CR-00062, 1995 Tenn. Crim. App. LEXIS 115 (Feb. 15, 1995); State v. Sample & McKay, No. 02C01-9506-CR-00175, 1996 Tenn. Crim. App. LEXIS 460 (July 26, 1996).

concern that the decision in <u>Wright</u> may unfairly prevent petitioners from litigating late-arising exculpatory evidence issues through no fault of their own. The appeals court also agreed with the trial court's determination that the jury's reliance on the felony murder aggravating circumstance in violation of article I, § 16 was harmless beyond a reasonable doubt under <u>State v. Howell</u>, 868 S.W.2d 238 (Tenn. 1993).

We granted this appeal.


## EXCULPATORY EVIDENCE CLAIM

### Suppressed "Brady" Evidence

The United States Supreme Court has held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." <u>Brady v. Maryland</u>, 373 U.S. at 87, 83 S. Ct. at 1196-97.[3] Evidence is favorable to an accused where it exculpates the accused, mitigates the punishment, or impeaches the prosecution's witnesses. <u>See Johnson v. State</u>, 38 S.W.3d at 55-56. Evidence is material when there is a reasonable probability that the result of the proceeding would have been different had the exculpatory evidence been disclosed. <u>Id.</u> at 58.

The post-conviction petition and attached exhibits in this case alleged that the prosecution violated these due process principles by suppressing police records that included numerous statements made by Melvin Wallace. For instance: Wallace told Sgt. J.D. Welch that he did not notice Sample during the robbery; Wallace told Sgt. Welch that he had been shot by McKay; Wallace told Officer J.D. Douglas that he could identify McKay but not the second man involved in the offense; and Wallace gave physical descriptions that did not match either McKay or Sample. The petition alleged that these statements were exculpatory and material because they contradicted Wallace's critical eyewitness testimony at trial.

In addition, the petition alleged that the prosecution suppressed the following exculpatory evidence: reports that Sample's fingerprints were not found at the scene of the offenses; reports that other potential suspects were near the scene at the time of the offenses; descriptions given to the dispatcher that matched neither Sample nor McKay; descriptions given to officers by witness Charles

---

[3] Moreover, the prosecution is responsible for any favorable evidence known to others acting on the State's behalf, including the police. <u>See</u> <u>Kyles v. Whitley</u>, 514 U.S. 419, 437, 115 S. Ct. 1555 (1995); <u>Johnson v. State</u>, 38 S.W.3d at 56.

-4-

Rice that matched neither Sample nor McKay; inconsistent statements made by Rice regarding the offenses; and reports that drugs were commonly sold from the L & G grocery store.[4]

The petitioner asserted that the claim was not raised within the three-year statute of limitations because he was unaware that the prosecution suppressed the exculpatory evidence until he had access to police investigative files pursuant to the decision in Capital Case Resource Center of Tennessee, Inc. v. Woodall, No. 01A01-9104-CH-00150, 1992 Tenn. Ct. App. LEXIS 94 (Jan. 29, 1992), which held that the Tennessee Public Records Act[5] applies to criminal cases under collateral review. Moreover, after remand, the petitioner asserted that he had requested exculpatory evidence both before trial and after the Woodall decision and that he did not obtain possession of the evidence until September of 1993. The trial court nonetheless determined that the claim was barred by the statute of limitations.

Statute of Limitations

At the time the petitioner filed this petition for post-conviction relief, the Post-Conviction Procedure Act stated:

> [a] prisoner in custody under sentence of a court of this state must petition for post-conviction relief under this chapter within three (3) years of the date of the final action of the highest state appellate court to which an appeal is taken or consideration of such petition shall be barred.

Tenn. Code Ann. § 40-30-102 (1990).[6] The statute was applied prospectively, meaning that petitioners whose cases were final before the statute was enacted were given three years from the effective date of July 1, 1986, in which to seek post-conviction relief. See State v. Masucci, 754 S.W.2d 90 (Tenn. Crim. App. 1988). Because this Court decided the petitioner's direct appeal in 1984, the parties agree that the three-year statute of limitations began to run on July 1, 1986, and that the present petition, filed in January of 1995, was filed well after the limitations period expired.

Sample argues, however, that the exculpatory evidence claim could not have been raised before the statute of limitations expired because he did not have access to investigative files until the decision in Woodall in January of 1992 and did not have actual possession of the exculpatory

---

[4] In addition, the petition alleged that the prosecution withheld exculpatory evidence regarding an earlier robbery committed in the same area that the prosecution had attempted to link to Sample and McKay.

[5] Presently codified at Tenn. Code Ann. § 10-7-505 (1999 & Supp. 2001).

[6] In contrast, the current Post-Conviction Procedures Act contains a one (1) year statute of limitations. See Tenn. Code Ann. § 40-30-202(a) (1997). Because Sample's petition was filed before the effective date of the present act, it is governed by the Post-Conviction Procedure Act then in effect.

evidence until September of 1993. Sample urges that application of the statute of limitations would deny him a reasonable opportunity to raise the claim and violate due process. The State, which notes that Woodall was decided in January of 1992, and that the petition was not filed until January of 1995, maintains that the claim was barred by the statute of limitations and that the petitioner was not denied a reasonable opportunity to have the claim heard.[7]

Due Process

We first addressed whether due process may require an exception to the post-conviction statute of limitations in Burford v. State, 845 S.W.2d 204 (Tenn. 1992). The petitioner, whose post-conviction petition challenging his enhanced sentencing as a persistent offender was filed after the statue of limitations, argued that he could not raise the issue until prior convictions used to enhance his sentence were set aside in a separate post-conviction suit in another county. Id. at 205.

We recognized that although the State has a legitimate interest in preventing the litigation of stale claims by enacting statutes of limitations in post-conviction cases, "due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner." Id. at 208. In weighing the interests of a petitioner against the interests of the State, we said that "the test is whether the time period provides an applicant a reasonable opportunity to have the claimed issue heard and determined." Id. at 208. Accordingly we concluded that strict application of the statute of limitations to prevent the petitioner from challenging his improperly enhanced sentence under the unusual procedural circumstances in Burford violated due process. Id.

In applying Burford, we have since clarified that due process may prohibit strict application of the statute of limitations in a post-conviction case "when the grounds for relief, whether legal or factual, arise after . . . the point at which the limitations period would normally have begun to run." Sands v. State, 903 S.W.2d 297, 301 (Tenn. 1995). In such a case, the court must determine whether application of the limitations period would deny the petitioner a reasonable opportunity to present the claim by balancing the "liberty interest in 'collaterally attacking constitutional violations occurring during the conviction process,' . . . against the State's interest in preventing the litigation of 'stale and fraudulent claims.'" Id. (citations omitted); see also Caldwell v. State, 917 S.W.2d 662 (Tenn. 1996) (application of the three-year statute of limitations did not deny petitioner a reasonable opportunity to raise a pretextual arrest issue).[8]

---

[7]     In addition, the State notes that the claim was actually available several months earlier pursuant to the Court of Appeals' decision in Freeman v. Jeffcoat, No. 01A01-9103-CV-00086, 1991 Tenn. Ct. App. LEXIS 659 (Sept. 11, 1991, as corrected), which reached a similar conclusion as Woodall.

[8]     In adopting this balancing analysis, we have declined to create a specific limitations period for later-arising claims. Burford v. State, 845 S.W.2d at 208; see also Wright v. State, 987 S.W.2d at 30.

As the parties recognize, we applied this balancing analysis to circumstances similar to the present case in Wright v. State, 987 S.W.2d 26 (Tenn. 1999).  In Wright, the petitioner's first degree murder conviction and death sentence were affirmed on direct appeal in 1988.  In January of 1995, after the three-year statute of limitations had expired, the petitioner filed a post-conviction petition alleging that the prosecution violated his right to due process by withholding exculpatory evidence. As in the present case, the petitioner alleged that the claim did not arise until he had access to investigative records under the Court of Appeals' decision in Woodall.  The trial court nonetheless found that the claim was barred by the three-year statute of limitations and dismissed the petition.

On appeal, we agreed that the exculpatory evidence issue was a later-arising claim and stressed that "the critical inquiry [was] whether . . . application of the three-year statute of limitations effectively denied Wright a 'reasonable opportunity' to raise the issue."  Wright v. State, 987 S.W.2d at 29.  We also acknowledged that the right asserted by Wright – the denial of due process from the prosecution's suppression of exculpatory evidence – was a personal trial right directly relating to the justice or integrity of the conviction and sentence.  Id. at 30 (citing Brady v. Maryland, 373 U.S. at 87, 83 S. Ct. at 1197).

In applying the analysis, however, we determined that the balancing otherwise "weigh[ed] heavily in favor of the legitimate interests of the State," inasmuch as the post-conviction suit was filed ten years after the commission of the offense, six and one-half years after the conviction became final, three and one-half years after the three-year post-conviction statute of limitations expired; and nearly three years after the Woodall decision.  See id.  Moreover, we concluded:

> [T]his passage of time is directly related to the manner and means of litigating Wright's issue.  The availability of critical witnesses and their ability to recall and relate details as to the alleged suppression of exculpatory evidence and the facts of this offense are immediate and significant concerns.  Wright's mere allegation that the prosecution suppressed exculpatory evidence does not warrant relief.  Instead, Wright must establish that favorable evidence existed, that it was material to the defense, and that it was, in fact, suppressed by the prosecution.  Accordingly, . . . raising this issue at this stage of the proceedings, would require extensive, possibly expensive litigation.

Id. (citations omitted); see also Caldwell v. State, 917 S.W.2d at 666 ("All the dangers inherent in the litigation of stale claims – which the State has a legitimate interest in preventing – appear to be present here").

Despite the factual similarities to the present case, we believe that the State reads Wright too broadly in asserting that it requires the dismissal of all late-arising exculpatory evidence claims.  We did not establish such a per se rule for rejecting exculpatory evidence claims in Wright or any other case, nor have we ever created a specific limitations period for late-arising claims in general.  See

Wright v. State, 987 S.W.2d at 30; Burford v. State, 845 S.W.2d at 208. Instead, beginning with Burford, we have consistently said that the principles of due process are flexible and require balancing of a petitioner's liberty interests against the State's finality interests on a case by case basis. See Burford v. State, 845 S.W.2d at 207 ("Identification of the precise dictates of due process requires consideration of both the governmental interests involved and the private interests affected by the official action.").

Accordingly, our review must consider that the record in the present case differs in several important respects from that in Wright. The post-conviction petition filed by Sample was accompanied by exhibits and records replete with apparent exculpatory evidence; in contrast, the petition in Wright contained "mere allegations" of exculpatory evidence. See Wright v. State, 987 S.W.2d at 30; see also Tenn. Code Ann. § 40-30-104(b) (1990) ("The petition shall have attached affidavits, records or other evidence supporting its allegations . . . .").[9] When the court undertakes its review of the petition, exhibits, and records, such considerations necessarily bear upon the petitioner's liberty interest.[10]

Similarly, the record in this case, unlike Wright, details the petitioner's efforts to obtain exculpatory evidence both before trial, after trial, and after the decision in Woodall. The petitioner asserted that the prosecution refused to respond to his repeated requests and that he was unable to secure the evidence until September of 1993, and then only through the assistance of the Capital Case Resource Center. The State's sole response is that the exculpatory evidence was available when Woodall was decided in January of 1992; the State does not explain why the prosecution did not respond to the repeated requests of the petitioner and does not otherwise convincingly respond to the assertions regarding the petitioner's efforts to secure the evidence.[11] Again, these considerations bear upon not only the significance of the petitioner's liberty interest in asserting a late-arising claim in a capital case but also the balancing of that interest against the State's asserted interest.

---

[9] As we have recognized in analogous circumstances regarding the tolling of the statute for mental incompetency: "We emphasize that to make a prima facie showing of incompetence requiring tolling of the limitations period, a post-conviction petition must include specific factual allegations that demonstrate [mental incompetency]. Unsupported, conclusory, or general allegations of mental illness will not be sufficient to require tolling and prevent summary dismissal . . . . State v. Nix, 40 S.W.3d 459, 464 (Tenn. 2001).

[10] In this case, the trial court appeared to make such an initial determination by finding that Melvin Wallace's inconsistent statements regarding identification were not material because he was thoroughly examined at trial. We note, however, that the trial court assessed only a portion of the witness's statements and, moreover, did not make findings regarding *all* of the allegedly exculpatory evidence asserted by the petitioner.

[11] The trial court's finding that the petitioner's efforts to acquire the evidence amounted to a challenge to the conduct of his post-conviction counsel is clearly erroneous; the efforts were directly relevant to the question of whether the petitioner had a reasonable opportunity to raise the issue. Similarly, the trial court's observation that the petitioner did not comply with the Public Records Act by requesting the records in person during business hours is hardly dispositive of whether the petitioner had a reasonable opportunity to raise the issue within the statutory period.

Moreover, given these significant distinctions, our decisions following Wright likewise bear upon the issue in this case. In Williams v. State, 44 S.W.3d 464 (Tenn. 2001), for example, the petitioner alleged that his pro se petition for post-conviction relief was untimely because his attorney failed to comply with the procedural requirements for withdrawing from representation following direct appeal and the petitioner did not know whether his direct appeal remained pending. We remanded for an evidentiary hearing to determine whether the petitioner was denied a reasonable opportunity to seek post-conviction relief through no fault of his own due to the possible misrepresentation of his counsel. Id. at 471. Moreover, even though the petitioner apparently had three months to seek post-conviction relief after learning that his direct appeal had concluded, we remanded for a determination of whether he had "time enough" to preserve a reasonable opportunity to seek relief. See also Burford v. State, 845 S.W.2d at 208.

Similarly, a majority of the Court recently held under analogous circumstances that due process mandated an exception to the one-year statute of limitations where a petitioner in a capital case sought a writ of error coram nobis based on newly discovered evidence of actual innocense. State v. Workman, 41 S.W.3d 100 (Tenn. 2001).[12] In relying on Burford and Williams, the Court observed:

> Weighing the[] competing interests in the context of this case, we have no hesitation in concluding that due process precludes application of the statute of limitations to bar consideration of . . . this case. [The defendant's] interest in obtaining a hearing to present newly discovered evidence that may establish actual innocence of a capital offense far outweighs any governmental interest in preventing the litigation of stale claims.

Id. at 103. Significantly, the majority stressed that the "delay in obtaining th[e] evidence [was] not attributable to the fault of [the defendant] or his attorneys," and that the State had failed to respond to a prior subpoena that sought the evidence. Id. Moreover, the majority concluded that the fact that the defendant waited 13 months to raise the claim did not eliminate the due process implications. Id. at 103-104.

In our view, these considerations are applicable in the present case given the distinctions between it and Wright. In Williams, for example, we emphasized that a post-conviction petitioner should not be denied a reasonable opportunity to raise a claim due to another's misconduct. In Workman, we emphasized that newly found exculpatory evidence in a capital case may warrant due process consideration where the fault in creating delay in raising the issue does not rest with the

_____

[12] Although I joined Justice Barker in dissenting from the majority in Workman, I fully respect that it is the law in this State and must be applied when applicable. As such, I find that the reasoning in Workman with respect to the appropriate due process balancing analysis under Burford and its progeny is persuasive as applied in this post-conviction capital case.

petitioner. Moreover, the fact that Sample waited approximately 16 months after discovering the evidence before raising the issue is not substantially different than the 13-month period in Workman. As we said in Workman, "the time within which th[e] petition was filed does not exceed the reasonable opportunity afforded by due process." Id. at 103.

In reaching this holding we disagree with the dissent's conclusion that the petitioner is barred from hearing his claim because he waited an unreasonable length of time to raise the issue after obtaining the evidence. Initially, we stress that the petitioner, despite his efforts, did not obtain the exculpatory evidence until well after the three-year statute of limitations had expired and therefore had *no* opportunity to file the claim within the statutory period. In comparison, the Court has granted due process relief in cases where the petitioners discovered their late-arising claims for relief *before* the statute of limitations had expired yet asserted the claims *after* the statute expired. See Burford v. State, 845 S.W.2d at 209 (nine months remaining in the statutory period); Williams v. State, 44 S.W.3d at 471 (three months remaining in the statutory period).

In addition, although the petitioner did not raise the issue until 16 months after obtaining the evidence, it bears noting that there was at that time *no* statute of limitations applicable to late-arising claims; indeed, the Court in Burford, which was decided nine months before Sample obtained the evidence in this case, declined to adopt a specific period for asserting late-arising claims in favor of a case by case due process analysis. Burford, 845 S.W.2d at 208; see also Wright, 987 S.W.2d at 30.[13] Moreover, the 16-month period under these circumstances must be viewed with and mitigated by the fact that the prosecution suppressed the evidence and prevented the issue from being litigated for over 10 *years*. In balancing the interests of the parties, there is simply no basis for holding that the 16-month period in and of itself was unreasonable.

Accordingly, we conclude that our decision in Wright v. State, 987 S.W.2d 26 (Tenn. 1999), did not create a per se rule requiring the dismissal of all late-arising suppression of exculpatory evidence claims and that the record in this case preponderates against the trial court's determination that the petitioner's liberty interests in raising such an issue were outweighed by the State's interest in finality. We therefore remand for further proceedings on this claim.

## MIDDLEBROOKS ERROR

As detailed above, the petitioner asserted that the jury's reliance on the felony murder aggravating circumstance to impose a death sentence for the offense of felony murder violated article

---

[13] The dissent writes that if the petitioner is "somehow granted an additional 12 months after his discovery of the alleged exculpatory evidence to file a petition for relief, nothing here suggests that he is entitled to an extra *four* months beyond that period . . . ." (emphasis in original). The dissent's consideration of a 12-month period in its analysis is misplaced given that the statute of limitations applicable in this post-conviction case was three years and there was no specific statutory period for raising late-arising claims. Although the dissent faults the Workman decision for allowing a 13-month delay where the statute of limitations in a coram nobis case was 12 months, that statutory period is not at issue here.

-10-

I, § 16 of the Tennessee Constitution as provided in State v. Middlebrooks, 840 S.W.2d 317 (Tenn. 1992). In Middlebrooks, we held that the felony murder aggravating circumstance set forth in Tenn. Code Ann. § 39-2-203(i)(7) (1982) duplicated the elements of the offense of felony murder and, when applied to a felony murder, failed to narrow the class of death eligible murderers as required by article I, § 16 of the Tennessee Constitution and the Eighth Amendment to the United States Constitution.

The new constitutional rule announced in Middlebrooks has since been applied retroactively in post-conviction cases. See Barber v. State, 889 S.W.2d 185, 187 (Tenn. 1994). As both parties recognize, therefore, the jury's reliance on the invalid felony murder aggravating factor was constitutional error properly recognized in this post-conviction proceeding. The critical inquiry is whether the error was harmless and whether a resentencing hearing is required.[14]

In State v. Howell, we held that a Middlebrooks error does not require a resentencing hearing if the reviewing court concludes "beyond a reasonable doubt that the sentence would have been the same had the jury given no weight to the invalid felony murder aggravating factor." 868 S.W.2d 238, 262 (Tenn. 1993). We stressed that the reviewing court must "completely examine the record for the presence of factors which potentially influence the sentence ultimately imposed," including "the number and strength of remaining valid aggravating circumstances, the prosecutor's argument at sentencing, the evidence admitted to establish the invalid aggravator, and the nature, quality and strength of mitigating evidence." Id. at 260-61.[15]

In reviewing the first factor under Howell, there were two valid aggravating circumstances relied upon by the jury in imposing the death sentences, in addition to the invalid felony murder aggravating circumstance: that Sample knowingly created a great risk of death to two or more persons other than the victim murdered, during the act of murder; and that the murders were committed to avoid arrest or prosecution. Tenn. Code Ann. § 39-2404(i)(3), (6) (Supp. 1981).[16]

With regard to the "great risk of death" aggravating circumstance, this Court has said it "has been applied where a defendant fires multiple gunshots in the course of a robbery or other incident at which persons other than the victim are present." State v. Henderson, 24 S.W.3d 307, 314 (Tenn.

---

[14] Although we have remanded on the exculpatory evidence issue, we believe it is appropriate to address the Middlebrooks issue as it presently has been raised under the existing circumstances in this record. Our conclusions will not preclude additional consideration of the sentencing error as it may relate to the findings regarding the exculpatory evidence. See Johnson v. State, 38 S.W.3d at 59 (consideration of exculpatory evidence with respect to remaining aggravating circumstances).

[15] Initially, we note that we have previously rejected the petitioner's argument that an appellate court may not conduct harmless error review of an invalid aggravating circumstance. See State v. Boyd, 959 S.W.2d 557, 562-63 (Tenn. 1998). We have also previously rejected the argument that the harmless error review must also weigh the effect of alleged errors that are not properly before the post-conviction court. See State v. King, 989 S.W.2d 319, 327 (Tenn. 1999).

[16] Presently found at Tenn. Code Ann. § 39-13-204(i)(3), (6) (1997 & Supp. 2001).

-11-

2000) (citation omitted). The trial court found that both Sample and McKay "were convicted of murdering two people and in addition a third person was shot and left to die." The Court of Criminal Appeals likewise observed that the evidence showed that "McKay and Sample were acting jointly to kill three people, and they fired at least seven gunshots between them." The court reasoned that the murder of Cooke placed two other victims, Jones and Wallace, at great risk of death, and that the murder of Jones placed two other victims, Cooke and Wallace, at great risk of death. We agree that the facts revealed that Sample engaged in conduct that knowingly created a great risk of death to two or more persons in the store other than the murder victims. Indeed, we have previously cited the present case as an example of this aggravating circumstance being applied properly. See Johnson v. State, 38 S.W.3d at 61; see also State v. Burns, 979 S.W.2d 276, 281 (Tenn. 1998).

With regard to the "avoiding arrest or prosecution" aggravating circumstance, this Court has frequently said that this aggravating circumstance applies whenever the evidence demonstrates that avoidance of arrest or prosecution was one of the motives for the killing, and that it need not be the sole motive. See State v. Henderson, 24 S.W.3d at 314; see also State v. Bane, 57 S.W.3d 411, 423 (Tenn. 2001); Terry v. State, 46 S.W.3d 147, 161 (Tenn. 2001). The trial court found that it was "abundantly clear from the record that the shootings occurred in order for [Sample and McKay] to avoid arrest and prosecution." The Court of Criminal Appeals likewise correctly observed that Sample and McKay killed two eyewitnesses to the robbery and then fled after believing a third eyewitness had been killed.

In turning to the next Howell factor, we observe that no additional evidence was admitted to support the invalid felony murder aggravating circumstance and that it was relied upon by the prosecution solely to prove the offenses in the guilt phase. As we said in Howell, "an aggravating factor which duplicates the elements of the underlying crime has less relative tendency to prejudicially affect the sentence imposed than invalid aggravating factors which interject inadmissible evidence into the sentencing calculus, or which require the sentencing jury to draw additional conclusions from the guilt phase evidence." 868 S.W.2d at 261. Accordingly, the jury in this case heard no more evidence in support of the felony murder aggravating circumstance than had already been presented to prove the offense of felony murder during the guilt phase of the trial.

With regard to the emphasis placed on the felony murder, the record reveals that the prosecution mentioned the felony murder aggravating circumstance on several occasions in its closing argument following the sentencing proceedings. As the trial court found, however, "it was certainly mentioned that the murders were committed during the commission of a robbery," but "more significance was attributed to the other aggravating factors." Similarly, the Court of Criminal Appeals noted that while the prosecution's closing argument "did mention the felony murder aggravator several times, this issue was not dwelled upon or given undue emphasis." Our review also reveals that the majority of the prosecution's arguments was devoted to the remaining two aggravating circumstances and rebutting the mitigating evidence.

With regard to the final Howell factor – the nature, quality and strength of the mitigating evidence – the trial court found that Sample asked the jury to spare his life for his wife and child and

that he presented evidence regarding his family support and work background. The Court of Criminal Appeals summarized the mitigating proof as follows:

> Two of Samples' foremen testified on his behalf, stating that he was an 'exceptionally good' employee, that he was 'very conscientious,' and that he had 'no problem with the people' he oversaw. Sample's sister testified, explaining that Sample had left school after the ninth grade to start working. [Sample's] mother-in-law and father-in-law . . . testified as to Sample's good character and as to his good qualities as a husband, father, and son-in-law. His mother testified . . . that Sample was a good son and [asked] the jury to spare his life. Sample testified on his own behalf, stating that he did not commit these crimes and asking the jury to spare his life for the sake of his son and wife.

We have considered all of the relevant Howell analytical factors in our review of the record, and have considered and applied the requirement for individualized sentencing. We agree with the Court of Appeals that while the evidence in mitigation warrants some weight, the evidence of two remaining aggravating circumstances was substantial. Moreover, we agree that there was no additional or improper evidence of felony murder during sentencing and that the prosecution did not place great or undue emphasis on the felony murder aggravating circumstance. Accordingly, we agree with the Court of Criminal Appeals' that the verdict would have been the same had the jury given no weight to the invalid aggravating circumstance.

## CONCLUSION

After carefully reviewing the record and applicable authority, we hold that our decision in Wright v. State, 987 S.W.2d 26 (Tenn. 1999), did not create a per se rule requiring the dismissal of all late-arising suppression of exculpatory evidence claims and that the record in this case preponderated against the trial court's determination that the petitioner's liberty interests in raising such an issue were outweighed by the State's interest in finality. We further hold that the violation of article I, § 16 of the Tennessee Constitution under the present facts in the record was harmless error beyond a reasonable doubt under State v. Howell, 868 S.W.2d 238 (Tenn. 1993). We therefore reverse the Court of Criminal Appeals' judgment and remand to the trial court for further proceedings consistent with this opinion. Costs of this appeal are taxed to the State of Tennessee for which execution may issue if necessary.

_____

E. RILEY ANDERSON, JUSTICE

-13-