# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
Heard in Nashville
October 2, 2002 Session

## RICKY HARRIS v.  STATE OF TENNESSEE

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for Carter County**
**No.  10297     R.  Jerry Beck, Judge**

---

**No.  E1999-02771-SC-R11-PC - Filed April 16, 2003**

---

E. RILEY ANDERSON, J., with whom ADOLPHO A. BIRCH, JR., J., joins, concurring in part and dissenting in part.

I concur in the majority's opinion that the petitioner's motion did not establish grounds to reopen his post-conviction suit pursuant to Tennessee Code Annotated section 40-30-217(a) (1997). I dissent, however, from the majority's conclusion that the Court of Criminal Appeals erred in treating the motion as a petition for the writ of error coram nobis.  In my view, the substance of the motion alleged grounds to be treated as a petition for the writ of error coram nobis and the majority of this Court has erred in failing to address the important constitutional issue this case was taken to resolve.

Turning to the merits of the case, I would hold that the due process balancing analysis under Workman v. State, 41 S.W.3d 100 (Tenn. 2001), may toll the one-year writ of error coram nobis statute of limitations where the prosecution has suppressed exculpatory evidence in a non-capital proceeding.  Indeed, this Court has never distinguished between capital and non-capital cases in considering whether due process mandates the tolling of a statute of limitations.  I would also hold that the petitioner's motion asserted a prima facie case for the issuance of a writ of error coram nobis and raised grounds requiring that the statute of limitations be tolled under due process principles.

I would therefore affirm the Court of Criminal Appeals' judgment remanding the case to the trial court for a determination of whether (1) the petitioner has newly discovered evidence relating to matters litigated at trial, (2) the petitioner was without fault in failing to present the evidence, and (3) the evidence may have resulted in a different judgment had it been presented at trial.  Because the majority opinion fails to address these difficult issues, I respectfully dissent.

## BACKGROUND

As the majority accurately summarizes, the petitioner, Ricky Harris, was convicted of first degree murder and sentenced to serve life imprisonment in 1988. His conviction and sentence were affirmed on direct appeal in February of 1991. He later filed a post-conviction petition alleging that his counsel were ineffective and that the State had suppressed exculpatory evidence. The trial court denied post-conviction relief and the Court of Criminal Appeals affirmed the decision in December of 1998.[1]

On December 10, 1998, the petitioner filed a motion in the trial court seeking to reopen the post-conviction case on the grounds that the prosecution withheld exculpatory alibi evidence at trial in violation of due process under the United States and Tennessee Constitutions. See Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963); Sample v. State, 82 S.W.3d 267 (Tenn. 2002). The motion to reopen alleged that the State had withheld the identification of a witness who had stated that she was with the petitioner during the time prosecutors alleged he was disposing of the victim's body. According to the motion, which was accompanied by interview notes purportedly taken by a police officer, the witness, Corrine Hampton, said that she had car trouble at about 8:25 a.m. on September 8, 1987, and that the petitioner stopped to help her. She further stated that she did not see a body inside the petitioner's car or trunk and that she followed the petitioner to Sherwood Chevrolet to have her car repaired.

The motion asserted that the petitioner learned of this exculpatory evidence only after receiving an anonymous letter in response to a newspaper ad the petitioner had placed in the Elizabethon Star seeking information about the case in August of 1998. The motion explained the materiality of the evidence:

> During the trial the State maintained the Petitioner had killed the victim at her home or abducted her and took her to the Carr Cemetery where he disposed of the body or killed her at that point and disposed of the body. The State maintained that this occurred between the time period of 8:00 a.m. and 9:00 to 9:30 a.m. Petitioner testified that he did not commit the crime and that he drove [] Hampton straight to Sherwood Chevrolet in Johnson City. If the State would have provided this evidence, petitioner could have presented Ms. Hampton as his alibi witness and corroborated his testimony . . . .

---

[1] See State v. Ricky Jerome Harris, No. 85, 1990 WL 171507 (Tenn. Crim. App., Nov. 8, 1990), perm. app. denied, (Tenn., Feb. 4, 1991); Ricky Harris, No. 03C01-9611-CR-00410, 1998 WL 191441 (Tenn. Crim. App., April 23, 1998), perm. app. denied, (Tenn., Dec. 7, 1998).

Although the petitioner initially submitted only his own affidavit reciting the alleged facts, he later filed an affidavit containing the allegedly exculpatory statements made by the witness in question.[2]

The trial court denied the motion after finding that the alleged exculpatory evidence did not constitute an appropriate ground for reopening a post-conviction petition under Tennessee Code Annotated section 40-30-217(a). On appeal, the Court of Criminal Appeals agreed that the suppression of exculpatory evidence is not a ground upon which to reopen a post-conviction case under Tennessee Code Annotated section 40-30-217(a). A majority of that court nonetheless concluded that the motion should be treated as a petition for the writ of error coram nobis and that Workman v. State, 41 S.W.3d 100 (Tenn. 2001), which held that due process may toll the one-year writ of error coram nobis statute of limitations in a capital case, should apply and not be limited to capital cases. The case was therefore remanded for the trial court to determine (1) whether the State suppressed exculpatory evidence, (2) whether the petitioner was diligent and not at fault in failing to raise the issue earlier, and (3) whether the evidence may have resulted in a different outcome. Unlike the majority of this Court, I would affirm the Court of Criminal Appeals' judgment.

## ANALYSIS

### Motion to Reopen

The majority opinion correctly begins its analysis with the threshold question of whether the issue raised by the petitioner, *i.e.*, the State's suppression of exculpatory evidence, was a proper basis upon which to reopen a post-conviction petition. The Post-Conviction Procedure Act requires a petitioner to "petition for post-conviction relief . . . within one (1) year of the final action of the highest state appellate court to which an appeal is taken . . . ." Tenn. Code Ann. § 40-30-202(a) (1997). Moreover, the Act "contemplates the filing of only one (1) petition for post-conviction relief." Tenn. Code Ann. § 40-30-202(c).

A petitioner may move to reopen post-conviction proceedings only "under the limited circumstances set out in § 40-30-217." Tenn. Code Ann. § 40-30-202(c). As the majority notes, the circumstances include:

> (1) The claim in the motion is based upon a final ruling of an appellate court establishing a constitutional right that was not recognized as existing at the time of trial, if retrospective application of that right is required. Such motion must be filed within one (1) year of the ruling of the highest state appellate court or the United States supreme court establishing a constitutional right that was not recognized as existing at the time of trial; or

---

[2] The trial court accepted the affidavits as filed, and the Court of Criminal Appeals treated them as a supplemental record on appeal.

(2) The claim in the motion is based upon new scientific evidence establishing that such petitioner is actually innocent of the offense or offenses for which the petitioner was convicted;  or

(3) The claim asserted in the motion seeks relief from a sentence that was enhanced because of a previous conviction and such conviction in the case in which the claim is asserted was not a guilty plea with an agreed sentence, and the previous conviction has subsequently been held to be invalid, in which case the motion must be filed within one (1) year of the finality of the ruling holding the previous conviction to be invalid;  and

(4) It appears that the facts underlying the claim, if true, would establish by clear and convincing evidence that the petitioner is entitled to have the conviction set aside or the sentence reduced.

Tenn. Code Ann. § 40-30-217(a)(1)-(4) (1997).  These circumstances plainly do not allow the reopening of a post-conviction petition based on the State's suppression of exculpatory evidence. I therefore agree with the majority that the issue raised by the petitioner did not satisfy the limited statutory grounds for reopening a post-conviction proceeding set forth above.

Although I agree with the majority's conclusion, Judge Witt's dissenting opinion from the Court of Criminal Appeals expresses a view that I share.  Judge Witt recognized that the prosecutor's duty to reveal exculpatory evidence on both constitutional and ethical grounds is well-established and that the suppression of exculpatory evidence violates the accused's right to a fair trial.  Brady v. Maryland, 373 U.S. at 87, 83 S. Ct. at 1196-97.  Judge Witt therefore concluded that the suppression of exculpatory evidence, although not a ground to reopen a post-conviction case, may establish a due process basis for *tolling the post-conviction statute of limitations* in cases where a petitioner's liberty interest in litigating the issue after the expiration of the statute of limitations outweighs the State's otherwise legitimate interest in finality.  See Burford v. State, 845 S.W.2d 204 (Tenn. 1992).

I share Judge Witt's concern that the State should not benefit from delay it has created by suppressing exculpatory evidence and violating an accused's constitutional rights.  See Sample v. State, 82 S.W.3d at 276.  The legislature, however, has not indicated that a post-conviction case may be reopened on this basis, even though it has properly recognized the consequences of the State's suppression of exculpatory evidence with respect to relieving a petitioner from other post-conviction procedural defaults.  See Tenn. Code Ann. § 40-30-206(g)(2) (1997) (ground not barred by waiver if the "failure to present the ground was the result of state action in violation of the federal or state constitution.").  While legislative action would be the simplest means for resolving these issues, I nonetheless agree with the majority that the State's suppression of exculpatory evidence is not a ground upon which to reopen a post-conviction proceeding under the current provisions of Tennessee Code Annotated section 40-30-217(a).

<u>Writ of Error Coram Nobis</u>

The majority next concludes that the Court of Criminal Appeals erred in its sua sponte determination that the petitioner's motion to reopen should be treated as a petition for the writ of error coram nobis. The majority reasons that the pleading did not mention the writ of error coram nobis, that the petitioner's brief to the Court of Criminal Appeals indicated that he did not intend to file a petition for the writ of error coram nobis, and that there are procedural and factual differences between a motion to reopen and a petition for the writ of error coram nobis.

Although I agree that sua sponte action by the appellate court may be infrequent, I disagree with the majority's view that the Court of Criminal Appeals' action was error in this case and with Justice Holder's concurring opinion's conclusion that the petitioner waived review of the issue. In my view, the Court of Criminal Appeals' action was correctly based on the *substance* of the petitioner's pleading and these issues have now been presented directly to this Court. Moreover, since the majority's opinion does not prohibit the petitioner from filing a petition for the writ of error coram nobis following this appeal, the identical issues will undoubtedly return to this Court. Because the Court of Criminal Appeals' action was correct, and in the interests of judicial economy and efficiency, I would address the merits of the issues as now presented and argued.

Although the writ of error coram nobis is a narrow remedy, <u>see</u> <u>State v. Mixon</u>, 983 S.W.2d 661, 666 (Tenn. 1999), its requirements are well-established:

> Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

Tenn. Code Ann. § 40-26-105 (1997); <u>see also</u> <u>State v. Mixon</u>, 983 S.W.2d at 668. A petitioner must therefore show that (1) there is newly discovered evidence relating to matters litigated at the trial, (2) the petitioner was without fault in failing to present this evidence at the proper time, and (3) the evidence may have resulted in a different judgment had it been presented at the trial. The remedy in the appropriate case is a new trial. <u>Id.</u>

The caption of the petitioner's pleading belies the majority's conclusion that it was intended solely as a motion to reopen the petitioner's post-conviction suit. The pleading is entitled a "motion to reopen petition for post-conviction relief *or in the alternative, motion for a new trial based on newly discovered evidence.*" (Emphasis added.) The motion was not limited to grounds for reopening the petitioner's post-conviction suit and instead included the "newly discovered evidence" requirement for the writ of error coram nobis. In sum, the majority's premise that the motion was

intended solely as a request to reopen the petitioner's post-conviction proceeding is inconsistent with the very title of the document.

More importantly, the substance of the petitioner's pleading also belies the majority's conclusion. See Norton v. Everhart, 895 S.W.2d 317, 319 (Tenn. 1995) (recognizing that a court is not limited to the title or form of a pleading and must instead look to its substance). The motion asserted that the State withheld the identity of a witness who told a police officer that the petitioner assisted her when she had car trouble, that she did not see a dead body in the petitioner's car or trunk, and that she followed the petitioner to Sherwood Chevrolet to have her car repaired. The motion further asserted that the evidence would have corroborated the petitioner's alibi for the time period in which the State alleged he was disposing of the body. Finally, the motion alleged that the petitioner did not obtain the evidence until he received a response to an advertisement he had placed in the Elizabethton Star newspaper seeking information about his case in August of 1998.

In my view, the allegations in the motion established a prima facie case on each element for the writ of error coram nobis. The motion asserted that the petitioner obtained newly discovered evidence, that the evidence related to matters litigated at his trial, and that the petitioner was not at fault for failing to present the evidence at trial because the prosecution withheld the identity of the witness. The motion also asserted that the evidence would have corroborated the petitioner's alibi. I would therefore hold that the Court of Criminal Appeals correctly determined that the substance of the petitioner's motion alleged the necessary elements for raising a petition for the writ of error coram nobis.

### Statute of Limitations

By concluding that the Court of Criminal Appeals erred in treating the petitioner's motion as an error coram nobis petition, the majority effectively avoids the critical issue in this case: whether due process tolled the one-year statute of limitations for filing a petition for the writ of error coram nobis under our decision in Workman v. State, 41 S.W.3d 100 (Tenn. 2001).

As the parties concede, the petitioner failed to file his petition within one (1) year after the judgment became final as required in error coram nobis cases. Tenn. Code Ann. § 27-7-103 (2000). This Court has consistently recognized, however, that principles of due process may toll the writ of error coram nobis statute of limitations or the post-conviction statute of limitations where the petitioner's liberty interest in raising a late-arising issue outweighs the State's finality interest embodied in the statute. Workman, 41 S.W.3d at 101-02; see also Williams v. State, 44 S.W.3d 464 (Tenn. 2001); Seals v. State, 23 S.W.3d 272 (Tenn. 2000); Burford v. State, 845 S.W.2d 204 (Tenn. 1992).

In Workman, the petitioner's writ of error coram nobis petition, which claimed that he had evidence unavailable at trial that proved his innocence of capital murder, was dismissed because it was filed after the one-year statute of limitations in error coram nobis cases. A majority of the Supreme Court reversed the dismissal after weighing the competing interests:

[W]e have no hesitation in concluding that due process precludes application of the statute of limitations to bar consideration of the writ of error coram nobis in this case. [The petitioner's] interest in obtaining a hearing to present newly discovered evidence that may establish actual innocence of a capital offense far outweighs any governmental interest in preventing the litigation [of] stale claims. . . . The delay in obtaining this evidence is not attributable to the fault of [the petitioner] or his attorneys. . . . No court in this State has actually held a hearing to fully evaluate the strength of these claims. Under such circumstances, [the petitioner's] interest in obtaining a hearing on these claims clearly outweighs the governmental interest embodied in the statute of limitations. Accordingly, due process precludes summary dismissal of this claim based upon a statutory time bar.

Workman, 41 S.W.3d at 103. The case was therefore remanded to the trial court for further proceedings.

Although Workman was decided in the context of a capital case, and the Court was duly aware of the interests at stake in a capital case, its holding was not expressly limited to writ of error coram nobis petitions filed in capital cases. Indeed, the reasoning in Workman was predicated on a line of cases, beginning with Burford v. State, which applied due process principles to toll the statutes of limitations in circumstances not limited to capital cases. See Williams, 44 S.W.3d at 471; Seals, 23 S.W.3d at 279; Burford, 845 S.W.2d at 208. As we said in Burford, "before a state may terminate a claim for failure to comply with procedural requirements such as statutes of limitations, due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner." 845 S.W.2d at 208. In sum, this Court has never distinguished between capital and non-capital cases when analyzing whether due process mandates the tolling of a statute of limitations. Accordingly, I would affirm the Court of Criminal Appeals' determination that Workman is not limited to capital cases.

In applying the due process balancing analysis from Burford and Workman, I conclude that the petitioner's allegations that the State withheld the identification of an alibi witness and exculpatory statements made by that witness raise a substantial liberty interest affecting the petitioner's rights to due process and a fair trial. Indeed, this Court has recognized the significance of a suppression of exculpatory evidence issue when considering a petitioner's liberty interest under the due process balancing analysis. See Sample v. State, 82 S.W.3d at 276; see also Workman, 41 S.W.3d at 102.

Although the majority states in footnote 10 that it is reserving the later-arising claim question for another day, it engages in an extensive discussion of the alleged facts and then comes to conclusions about the issue it purports not to address. I disagree with the majority's conclusion that the petitioner's liberty interest was negated because he failed to raise a later-arising claim. The issue

-7-

is not simply the question of the petitioner's own whereabouts for the purpose of an alibi, but rather, the State's suppression of the identification of a witness and an exculpatory statement made by that witness. Moreover, the petitioner's knowledge of his location at the time of the offense would not be nearly as persuasive without the corroboration of a disinterested witness. In any event, any conclusions with regard to the petitioner's fault require factual findings that are better left to the trial court in evaluating whether the writ of error coram nobis requirements have been met. In short, I do not agree that the petitioner has failed to assert a later-arising issue or that the petitioner's liberty interests are diminished as concluded by the majority.

In addition, I believe that the petitioner's sentence of life imprisonment further heightened his liberty interest in seeking to raise these issues. The State has offered no principled basis for either distinguishing between a life sentence and a capital sentence in weighing a petitioner's liberty interest under the due process analysis or for finding that a life sentence does not implicate a significant liberty interest. The State's failure was foreordained because there is no question that a sentence of life imprisonment is a substantial deprivation of liberty.

Finally, I would conclude that balancing the interests of the parties favors the petitioner's liberty interest. The Court has implicitly recognized, for example, that the State's finality interest is seriously compromised when the prosecution has suppressed evidence in violation of its constitutional duty and is directly responsible for causing the delay in finality. See Sample, 82 S.W.3d at 276 ("[T]he 16-month period under these circumstances must be viewed with and mitigated by the fact that the prosecution suppressed the evidence and prevented the issue from being litigated for over 10 years."). Indeed, it is dubious to suggest that the State has any legitimate interest in the finality of a conviction where that conviction may have been secured in part through the suppression of evidence favorable to the accused. Any other conclusion is tantamount to stating that a petitioner should have no available remedy if and when the prosecution has succeeded in suppressing evidence until after the applicable statute of limitations has expired. I strongly reject such a view.

I disagree with Justice Holder's concurring opinion's conclusion that the record on appeal is insufficient to address this issue or to apply the due process analysis. On the contrary, the petitioner's liberty interests and the State's alleged interests in finality that I have discussed are fully evident from the record and can be balanced under the due process principles described in our controlling cases. I do agree, however, that a remand for additional proceedings is necessary to resolve the factual issues with respect to the writ of error coram nobis requirements. Accordingly, I would affirm the Court of Criminal Appeals' conclusion that due process tolled the one-year statute of limitations and that the case must be remanded to the trial court for further proceedings.

**CONCLUSION**

I concur in the majority's opinion that the petitioner's motion did not establish grounds to reopen his post-conviction suit pursuant to Tennessee Code Annotated section 40-30-217(a). I dissent, however, from the majority's conclusion that the Court of Criminal Appeals erred in treating

the motion as a petition for the writ of error coram nobis. In my view, the substance of the motion alleged adequate grounds to be treated as a petition for the writ of error coram nobis and the majority of this Court has erred in failing to address the important constitutional issue this case was taken to resolve.

Accordingly, I would address the merits of this case and would hold that the due process balancing analysis under Workman v. State, 41 S.W.3d 100 (Tenn. 2001), may toll the one-year writ of error coram nobis statute of limitations where the prosecution has suppressed exculpatory evidence in a non-capital case. This Court has never distinguished between capital and non-capital cases in considering whether due process mandates the tolling of a statute of limitations, nor is there any reason to do so. I would also hold that the petitioner's motion asserted a prima facie case for the issuance of the writ of error coram nobis and required that the statute of limitations be tolled under due process principles.

I would therefore affirm the Court of Criminal Appeals' judgment remanding the case to the trial court for a determination of whether (1) the petitioner has newly discovered evidence relating to matters litigated at trial, (2) the petitioner was without fault in failing to present the evidence, and (3) the evidence may have resulted in a different judgment had it been presented at trial. Because the majority opinion fails to address these difficult issues, I respectfully dissent. I am authorized to state that Justice Birch joins in this concurring and dissenting opinion.

_____
E. RILEY ANDERSON, JUSTICE