# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs August 3, 2010

## RICKY AWATT v. STATE OF TENNESSEE

### Direct Appeal from the Circuit Court for Madison County
#### No. C-08-170    Roy Morgan, Judge

---

### No. W2009-02050-CCA-R3-PC  - Filed October 22, 2010

---

A jury convicted the petitioner, Ricky Awatt, of first degree premeditated murder. The trial court sentenced him to life imprisonment in the Tennessee Department of Correction. On direct appeal, this court upheld the conviction. The Tennessee Supreme Court subsequently denied a discretionary appeal. The petitioner now appeals the judgment of the Madison County Circuit Court dismissing his petition for post-conviction relief. Specifically, the petitioner argues that, although the statute of limitations for post-conviction relief has passed, the statute of limitations should be tolled, allowing him to proceed with his petition. After review, we affirm the judgment denying post-conviction relief.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

J.C. MCLIN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and JOHN EVERETT WILLIAMS, JJ., joined.

Angela J. Hopson, Jackson, Tennessee, for the appellant, Ricky Awatt.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; James G. Woodall, District Attorney General; and Alfred Lynn Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### Background

Following a trial, a Madison County jury convicted the petitioner of first degree premeditated murder. The trial court sentenced the petitioner to life imprisonment in the Tennessee Department of Correction. On appeal, this court affirmed the trial court's

conviction and sentence. *See State v. Ricky Joe Awatt,* No. W2003-02680-CCA-R3-CD, 2004 WL 2378254, at *1 (Tenn. Crim. App., at Jackson, October 18, 2004), *perm. app. denied* (Tenn. February 28, 2005). The following is a summary of the facts of this case taken from this court's opinion on direct appeal:

In the light most favorable to the State, the proof at trial revealed that one or two weeks prior to January 16, 2002, Ernest Ontavious Richard Williamson ("Ernest") had a conversation with the [petitioner]. During the conversation, Ernest learned that there was "bad blood" brewing between the [petitioner] and the victim, Junecus Bolden. According to Ernest, the [petitioner] claimed that Bolden had threatened the [petitioner]'s brother, Elliot Awatt, and the [petitioner] was "gonna get Bolden back for threatening . . . to kill his brother." The [petitioner] declared that he wanted to kill Bolden, and "[h]e said he could do it himself."

At approximately 8:00 p.m. on January 16, 2002, the [petitioner] accompanied Ernest to the home of Ernest's brother, Anthony Williamson ("Anthony"), because Anthony was going to give Ernest a haircut. While the three men were together, the [petitioner] again talked about "getting" Bolden. Ernest and the [petitioner] left Anthony's house at approximately 10:00 p.m., and Ernest drove the [petitioner] home.

Earlier that day, at approximately 7:00 p.m., Bolden went to the residence of brothers Corey Alexander Moore ("Corey") and Jim Coty Moore ("Coty") for assistance installing a compact disc (CD) player in his car. Bolden was at the Moore residence for several hours. While Bolden was at the Moore residence, the [petitioner], who was the Moores' cousin and next-door neighbor, arrived. Because of technical difficulties, the men were unable to install the CD player. The [petitioner] pulled Corey aside and told him that Bolden had stolen some guns from him. Accordingly, the [petitioner] wanted to "whoop" Bolden. Corey agreed to help and advised Coty of the plan to beat Bolden.

The [petitioner] informed Bolden that he had a CD player at an abandoned white house in the neighborhood. Therefore, at approximately 10:00 or 10:30 p.m., the Moores, the [petitioner], and Bolden entered Bolden's car and rode to the location. Once at the house, the Moores and the [petitioner] pretended to look for the CD player in order to lure Bolden out of

the car. Eventually, Bolden became frustrated with the search and left the house. Once all four men were outside of the house, Coty announced that it was "taking too long" to begin "teach [ing] [Bolden] a little lesson," so he approached Bolden and began to strike him. Corey and the [petitioner] also hit Bolden. After a few minutes, the Moores determined that they had hit Bolden "enough," and they got back into the car, planning to leave Bolden stranded at the location. However, after hearing five loud shots, the Moores turned to see the [petitioner] standing over Bolden, holding a twelve gauge sawed-off shotgun with fire coming from the barrel. The [petitioner] got into the backseat of the vehicle, and Coty drove them home.

At approximately midnight on January 17, 2002, the [petitioner] arrived at Anthony Williamson's house. He told Anthony that "they had beat somebody up," and Anthony deduced that the [petitioner] was referring to Bolden. Anthony sent the [petitioner] to Ernest's house. Shortly thereafter, Ernest and the [petitioner] returned to Anthony's house, and the [petitioner] again stated that he "did it." The [petitioner] told the Williamsons that "him and his cousins, Coty and Corey, had beat up Mr. Bolden and then [the petitioner] shot him." The [petitioner] then insisted that the Williamsons help him move Bolden's body. The Williamsons reluctantly complied.

The [petitioner], driving Bolden's car, drove the Williamsons to the abandoned white house which was located approximately one-fourth of a mile from the [petitioner]'s home. Together, the three men loaded Bolden's body into the trunk of his car, and they tucked a quilt that had been in the trunk around the body. Once the body was in the trunk, the [petitioner] requested that Anthony drive as the [petitioner] did not have a driver's license.

Anthony drove Ernest and the [petitioner] to Ernest's house so that Ernest could get his car. Ernest then drove behind Anthony and the [petitioner] to the south fork of Forked Deer River. Upon arrival at the river, Anthony and the [petitioner] slid Bolden's car off a boat ramp into the river. Thereafter, Ernest drove the trio home.

Later in the afternoon, the [petitioner] returned to the Moore household and asked Corey to help him and his brother Elliot gather the shotgun shells from the scene of the crime. The men gathered the shells and disbursed them on the side of the road as they were driving home.

Bolden's car and body were discovered at approximately 8:15 or 8:30 a.m. on January 17, 2002. Police questioned the [petitioner], the Moores, and the Williamsons because they were Bolden's friends. Ultimately, the Moores and the Williamsons revealed the story of Bolden's death. The [petitioner] was arrested, and a trial followed.

Based upon the foregoing proof, the jury found the [petitioner] guilty of first degree premeditated murder. The trial court sentenced the [petitioner] to life imprisonment.

*Id*. at *1-2. On direct appeal, this court affirmed the conviction and sentence length. *Id*. at *1.

The petitioner requested a discretionary appeal to the Tennessee Supreme Court, and it was denied by the court on February 28, 2005. *Id*. On June 17, 2008, the petitioner filed for post-conviction relief alleging ineffective assistance of counsel. On December 11, 2008, the petitioner filed an amended petition for post-conviction relief. On December 23, 2008, in response to a Motion to Dismiss made by the state, the post-conviction court dismissed the petition as untimely. The petitioner subsequently filed notice of appeal on September 24, 2009.

**Analysis**

Before we address the merits of the petitioner's issue on appeal, we must first address the state's argument that counsel for the petitioner did not timely file his notice of appeal. A notice of appeal must be filed within thirty days after the date of entry of the judgment from which the petitioner is appealing. Tenn. App. R. P. 4(a). A notice of appeal is not jurisdictional, and the requirement for an untimely notice may be waived in the interest of justice. *Id.* The order of the post-conviction court was entered on December 23, 2008. The notice of appeal was not filed until September 24, 2009, and was therefore untimely. The state has not argued, nor does it appear, that the untimely notice of appeal prejudiced the state. The petitioner was convicted of first degree murder, a crime of serious gravity, and sentenced to life imprisonment. Accordingly, we conclude that waiving the filing requirement for the petitioner's appeal serves the interest of justice, and we will address the merits of his claim regarding the dismissal of his petition for post-conviction relief. *See State v. Mullins*, 767 S.W.2d 668, 669 (Tenn. Crim. App. 1988).

On appeal, the petitioner raises the issue of whether the trial court erred by dismissing the petition for post-conviction relief. Specifically, the petitioner argues that, because he did

not receive his trial record until July 23, 2007, he was not able to effectively and properly draft a petition for post-conviction relief, and therefore, the petition for post-conviction relief's statute of limitations should be tolled, allowing petitioner to bring his claim. Upon review, we conclude that the petitioner failed to demonstrate that this court should toll the statute.

On appeal, this court is required to affirm the post-conviction court's findings unless the petitioner proves that the evidence preponderates against those findings. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). Our review of the post-conviction court's factual findings is *de novo* with a presumption that the findings are correct. *Fields v. State*, 40 S.W.3d 450, 457-58 (Tenn. 2001). Our review of the post-conviction court's legal conclusions and application of law to facts is *de novo* without a presumption of correctness. *Id*.

A petition for post-conviction relief must be filed within one year of the final action of the highest state appellate court to which an appeal is taken, or, if no appeal is taken, within one year of the date on which the judgment became final, or consideration of the petition is barred. Tenn. Code Ann. § 40-30-102(a). Time is of the essence in claiming post-conviction relief, and compliance with the one-year statute is an element of the right to file a petition. *Id*. The statute itself provides three exceptions to the one-year statute of limitations: (1) when a new constitutional right has been recognized; (2) when the petitioner's innocence has been established by new scientific evidence; or (3) when a previous conviction that enhanced the petitioner's sentence has been held invalid. *Id*. § 40-30-102(b). The post-conviction court must also consider an otherwise untimely petition if the application of the statute of limitations would be a denial of due process. *See Seals v. State*, 23 S.W.3d 272, 278-279 (Tenn. 2000). The principles of due process are flexible, requiring a balancing of the petitioner's liberty interest against the state's finality interests. *Sample v. State*, 82 S.W.3d 267, 274 (Tenn. 2002).

Petitioner filed his petition more than three years after the date of the final action of our supreme court. Petitioner does not claim that his case falls within one of the three exceptions to the one-year statute of limitations. Petitioner, instead, argues that there should be another exception to Tennessee Code Annotated section 40-30-102(a). However, the legislature provided no other exception to the statute that would allow petitioner to prevail.

Petitioner further argues that a strict application of the statute of limitations denies a petitioner a reasonable opportunity to bring a post-conviction claim, thus violating due process. Petitioner relies on *Workman v. State* to say that due process interests may toll the post-conviction statute of limitations where the petitioner's liberty interest in raising a late issue outweighs the state's finality issue embodied in the statute. *Workman v. State*, 41 S.W.3d 101(Tenn. 2001). Petitioner alleges that his case is factually similar to *Workman*.

In *Workman*, there was no dispute that the defendant requested evidence that the state did not produce, and that the state later provided it for him. *See Harris v. Tennessee*, 102 S.W.3d 587 (Tenn. 2003). However, this case is distinguishable from *Workman*, because in this case, petitioner claims he could not sufficiently argue his post-conviction issues without the record from his trial. This case does not deal with "new evidence," which was "unavailable" at trial, has "never been evaluated in a hearing," and shows that the defendant is "actually innocent." *See Workman*, 41 S.W.3d at 100. While it is clear that there are times when due process interests are sufficient to toll the post-conviction statute of limitations, this is not one of them. In the present case, we conclude that petitioner has failed to establish that the dismissal of his claim amounts to a denial of due process. Therefore, petitioner's argument is without merit.

## Conclusion

Based on the foregoing, we affirm the judgment of the post-conviction court.

_____

J.C. McLIN, JUDGE