IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 16, 2018

**CHARLES P. MAXWELL v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2008-D-3374    Monte D. Watkins, Judge**

———————————————

**No. M2018-00875-CCA-R3-ECN**

———————————————

The Petitioner, Charles P. Maxwell, appeals the Davidson County Criminal Court's summary denial of his petition for a writ of error coram nobis from his conviction for driving while his license was suspended and his thirty-day sentence, which was suspended to probation after twenty-four hours in confinement. The Petitioner contends that the court erred by denying relief. We affirm the judgment of the coram nobis court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL and D. KELLY THOMAS, JR., JJ., joined.

Charles P. Maxwell, Nashville, Tennessee, Pro Se.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Glenn R. Funk, District Attorney General; and Roger D. Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case relates to a traffic stop during which the Petitioner was issued a citation for driving while his license was suspended. *See State v. Charles Phillip Maxwell*, No. M2009-02323-CCA-R3-CD, 2011 WL 345872 (Tenn. Crim. App. Feb. 1, 2011), *perm. app. denied* (Tenn. May 26, 2011). The Petitioner appealed, and in its opinion affirming the conviction, this court summarized the facts as follows:

> Officer Coleman Womack of the Metro Nashville Police Department testified that on March 5, 2008, he was assigned to the traffic division and was traveling on Bell [R]oad in Davidson County when he observed the Defendant not wearing a seatbelt. The Defendant was driving a 1987 black

Chevrolet Celebrity. Officer Womack stopped the Defendant and asked for his driver's license. The Defendant told him that he did not have a driver's license. Officer Womack "ran a status check" on the Defendant for "his driver's license status" and learned that the Defendant's driver's license had been suspended. Officer Womack gave the Defendant a citation and instructed the Defendant to pull into a Kroger parking lot and have someone drive him home.

On cross-examination, Officer Womack admitted that he initially drafted a citation for "driver's license required." Officer Womack testified that after he learned that the Defendant's license had been suspended, he corrected the citation before giving the citation to the Defendant. Officer Womack explained that the computer had been slow and that sometimes "it takes a minute to come back." Officer Womack testified that even though the status check revealed that the Defendant's license had been suspended, it was possible that the Defendant had never actually applied for a driver's license. He explained that if the Defendant had been stopped and cited for not having a driver's license, the department may have assigned the Defendant a driver's license number in order to document that the Defendant's privilege to drive had been suspended. However, he could not testify as to whether that had occurred in the Defendant's case because the records merely reflected that the Defendant's license had been suspended.

Kenneth Wade Birdwell of the Tennessee Department of Safety testified that he was the director of the financial responsibility office, which maintained the driving records in Tennessee. Mr. Birdwell testified that the Defendant's driver's license had been suspended and that his status had not been changed on March 5, 2008. Mr. Birdwell stated that according to the records maintained by the department, the Defendant applied for a driver's license and that a license was issued to the Defendant on August 31, 1989. On cross-examination, Mr. Birdwell admitted that he was only able to testify that the identifying information contained in the documents matched the Defendant, not that the Defendant was actually the person referenced in the records. Mr. Birdwell also testified that a person's privilege to drive may be suspended even if a person did not have an actual driver's license.

*Id.* at *1.

In 2016, the Petitioner previously sought error coram nobis relief, alleging that the trial court judge and his appellate counsel "conspired against" him and that his right to appeal his conviction was violated by appellate counsel's ineffective assistance. This court affirmed the coram nobis court's denial of relief and order that the Petitioner pay the court costs associated with his petition. *See Charles Phillip Maxwell v. State*, No.

M2017-02380-CCA-R3-ECN, 2017 WL 3328366 (Tenn. Crim. App. Aug. 4, 2017), *no perm. app. filed*.

On October 10, 2017, the Petitioner filed the present petition for a writ of error coram nobis. He alleged actual innocence of driving while his license was suspended based upon records showing that he never obtained a driver's license. The Petitioner attached multiple documents to his petition for relief, including an email exchange between Jennifer Meade with the Tennessee Department of Safety and Homeland Security and Teresa Maxwell. In the email correspondence, Ms. Meade confirmed that the department's records showed that the Petitioner had never obtained a Tennessee driver's license and that the Petitioner received traffic citations on May 26, 2014 and April 24, 1998, "which suspends [the] driving privilege." An affidavit signed by "Teresa Ann" reflected that she corresponded with Ms. Meade, who confirmed that the Petitioner never obtained a Tennessee driver's license and that "no driver license or grant of his [license] is suspended per any said record." Likewise, the Petitioner's personal affidavit stated that prosecutor Kyle Anderson "admit[ted] in open court" that the Petitioner did not have a valid driver's license and that the State "did not suspend" the Petitioner's license. An affidavit from Geoffrey Brendon reflected that prosecutor Kyle Anderson admitted in court that the Petitioner had neither applied for nor received a driver's license and that the State "did not suspend" the Petitioner's driver's license. The trial court's November 1, 2016 order, entered following the bench trial at which the Petitioner was found guilty of driving while his license was suspended, reflected, in relevant part, that the court credited the Petitioner's testimony that he did not have a driver's license, that he had never applied to obtain a driver's license, and that his truck was not registered.

The State did not respond to the petition, and the coram nobis court summarily denied relief. The court's order noted this court's denial of relief relative to the Petitioner's previous coram nobis petition and found that the present petition was without merit after determining that the Petitioner previously sought coram nobis relief. This appeal followed.

The Petitioner contends that the coram nobis court erred by denying relief. He argues that newly discovered evidence attached to his petition for relief reflects that he had never obtained a valid driver's license and that, as a result, he could not have been driving while his license was suspended. The State responds that the petition was filed beyond the one-year statute of limitations period and that due process does not require tolling the statute of limitations because the evidence was not newly discovered in that the Petitioner testified at the trial that he had never obtained a driver's license. We agree with the State.

A writ of error coram nobis lies "for subsequently or newly discovered evidence relating to matters which were not litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial."

- 3 -

T.C.A. § 40-26-105(b) (2012); *State v. Hart*, 911 S.W.2d 371, 374 (Tenn. Crim. App. 1995); *see Cole v. State*, 589 S.W.2d 941 (Tenn. Crim. App. 1979). The purpose of a coram nobis proceeding "is to bring to the attention of the court some fact unknown to the court, which if known would have resulted in a different judgment." *State ex rel. Carlson v. State*, 407 S.W.2d 165, 167 (Tenn. 1966). The decision to grant or deny such a writ rests within the sound discretion of the court. *Jones v. State*, 519 S.W.2d 398, 400 (Tenn. Crim. App. 1974); *see Teague v. State*, 772 S.W.2d 915, 921 (Tenn. Crim. App. 1988). A petition for a writ of coram nobis must be filed within one year of the judgment becoming final in the trial court. *State v. Mixon*, 983 S.W.2d 661, 670 (Tenn. 1999). A judgment becomes final "thirty days after its entry in the trial court if no post-trial motions are filed or upon entry of an order disposing of a timely filed, post-trial motion." *Harris v. State*, 301 S.W.3d 141, 144 (Tenn. 2010). "[T]he statute of limitations . . . is not an affirmative defense that must be specifically raised by the State in error coram nobis cases; instead, the . . . petition must show on its face that it is timely filed." *Nunley v. State*, 552 S.W.3d 800, 829 (Tenn. 2018). A limited exception to the statute of limitations exists when due process requires tolling. *Workman v. State*, 41 S.W.3d 100, 103 (Tenn. 2001).

"When a petitioner seeks a writ of error coram nobis based on newly discovered evidence of actual innocence, due process considerations may require tolling of the statute of limitations." *Harris*, 301 S.W.3d at 145 (citing *Workman*, 41 S.W.3d at 101). "[B]efore a state may terminate a claim for failure to comply with procedural requirements such as statutes of limitations, due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner." *Burford v. State*, 845 S.W.2d 204, 208 (Tenn. 1992); *see Workman*, 41 S.W.3d at 102. However, a petitioner "must exercise due diligence in presenting the claim." *Harris*, 301 S.W.3d at 144. Whether due process principles require tolling the statute of limitations is a mixed question of law and fact and is reviewed de novo with no presumption of correctness. *See Vaughn v. State*, 202 S.W.3d 106, 115 (Tenn. 2006).

The record reflects that on May 26, 2011, the supreme court denied the Petitioner's application for permission to appeal this court's denial of appellate relief in the conviction proceedings. *See State v. Charles Phillip Maxwell*, No. M2009-02323-SC-R11-CD (Tenn. May 26, 2011) (order). The petition for coram nobis relief was filed October 10, 2017, which was long after the statute of limitations period expired. *See Mixon*, 983 S.W.2d at 670.

Recently, our supreme court determined that "compliance with the timely filing requirement . . . is an essential element of a coram nobis claim." *Nunley*, 552 S.W.3d at 828. However, a petitioner can request equitable tolling of the limitations period.

To be entitled to equitable tolling, a prisoner must demonstrate with particularity in the petition: (1) that the ground or grounds upon which the prisoner is seeking relief are "later arising" grounds, that is grounds that arose after the point in time when the applicable statute of limitations normally would have started to run; [and] (2) that, based on the facts of the case, the strict application of the statute of limitations would effectively deny the prisoner a reasonable opportunity to present his or her claims. . . . A prisoner is not entitled to equitable tolling to pursue a patently non-meritorious ground for relief.

*Id*. at 829 (internal citation omitted). Likewise, "the coram nobis petition must be filed within a time period that 'does not exceed the reasonable opportunity afforded by due process.'" *Id*. at 830 (quoting *Sample v. State*, 82 S.W.3d 267, 275 (Tenn. 2002)); *see Workman*, 41 S.W.3d at 103.

The record reflects that the coram nobis court summarily denied relief because the Petitioner had filed a previous coram nobis petition challenging his conviction, not because the petition was untimely. The court did not address the one-year statute of limitations as an essential element of the Petitioner's claim. In order to be entitled to equitable tolling of the limitations period, the Petitioner was required to show that his evidence was later arising, that strict application of the statute of limitations would deprive the Petitioner of a reasonable opportunity to present his claim, and that he filed his claim within a reasonable time of obtaining the new evidence. *See Nunley*, 552 S.W.3d at 829-30.

However, the Petitioner has not presented newly discovered evidence. At the bench trial, the Petitioner testified that he had never obtained a driver's license. Kenneth Birdwell, Director of the Financial Responsibility Office of the Tennessee Department of Safety, testified that a person's "privilege to drive may be suspended even if a person did not have an actual driver's license." *Charles Phillip Maxwell*, 2011 WL 345872, at *1. The trial court determined that the Petitioner was driving on a public roadway and credited the Petitioner's testimony that he did not have a driver's license. The documents attached to the coram nobis petition reflect that although the Petitioner had not obtained a driver's license, as he contended at the trial, he had been issued traffic citations in 1998, which resulted in a suspension of the Petitioner's privilege to drive a motor vehicle at the time he was stopped by the police for failure to wear his seatbelt in 2008. The conviction offense is driving while the *privilege* is cancelled, suspended, or revoked. *See* T.C.A. § 55-50-504(a)(1) (2012) (amended 2017); *see also State v. Thomason*, 88 S.W.3d 611 (Tenn. Crim. App. 2000). The conviction offense does not require that a person have obtained a driver's license before the privilege to drive can be cancelled, suspended, or revoked, and the documents attached to the petition for relief reflect that although the Petitioner did not have a valid driver's license, the traffic citations he received resulted in the suspension of his privilege to drive a motor vehicle. This evidence is consistent with

the trial testimony of the Petitioner and Mr. Birdwell and is not newly discovered. Therefore, the Petitioner was not entitled to equitable tolling of the statute of limitations. Although the coram nobis court did not consider whether the petition was timely and whether the Petitioner was entitled to equitable tolling of the limitations period, we conclude that the coram nobis court did not abuse its discretion by summarily denying relief.

Based upon the forgoing and the record as a whole, the judgment of the coram nobis court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE