IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
June 18, 2019 Session

**CYRUS DEVILLE WILSON v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 93-A-176        Seth W. Norman, Judge**

_____

**No. M2018-01109-CCA-R3-ECN**

_____

Cyrus DeVille Wilson,[1] Petitioner, filed a petition for writ of error coram nobis. He argued that two key witnesses for the State, Marquise Harris and Phedrek Davis, had recanted their testimony. Petitioner argued that this recanted testimony was newly-discovered evidence that may have affected the outcome of his trial if it had been admitted. The coram nobis court denied relief. On appeal, Petitioner asserts that the coram nobis court abused its discretion by denying his petition. He argues that the coram nobis court illogically credited Mr. Harris' and Mr. Davis' trial testimony as juveniles over their recanted testimony as adults. He also contends that Detective Bill Pridemore's testimony that Mr. Harris only spoke with police after being assured that he would receive a Crime Stopper reward was newly-discovered evidence that may have had an impact on the outcome of his trial. After a thorough review of the facts and applicable case law, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and D. KELLY THOMAS, JR., J., joined.

Jessica Van Dyke, Nashville, Tennessee, (on appeal) and Jesse Lords, Madison, Tennessee, (at hearing) for the appellant, Cyrus DeVille Wilson.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; Glenn Funk, District Attorney General; and Dan H. Hamm, Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1] Other opinions from this court spell Petitioner's middle name as "Deville." However, for purposes of consistency and clarity, we will use the spelling found in Petitioner's coram nobis petition.

**OPINION**

**I. Factual and Procedural Background**

A jury convicted Petitioner of first degree murder. *State v. Cyrus Deville Wilson*, No. 01C01-9408-CR-00266, 1995 WL 676398, at *1 (Tenn. Crim. App. Nov. 15, 1995), *perm. app. denied* (Tenn. Mar. 25, 1996). On direct appeal, this court affirmed Petitioner's conviction. *Id.* This court's opinion on direct appeal set out the following summary of the evidence admitted at Petitioner's trial:

On September 15, 1992, Metro Davidson police officers found the body of Christopher Luckett partly lodged underneath a chain link fence in East Nashville. The victim had sustained a fatal gunshot wound to the head. The officers also found empty shotgun shells, shotgun "wadding," and a blue duffel bag at the crime scene. On February 2, 1993, the Davidson County Grand Jury indicted . . . [Petitioner] for the victim's murder. The case proceeded to trial on January 31, 1994.

At trial, the [S]tate first called Chiquita Lee, the victim's sister, in order to establish the victim's age and health. Ms. Lee testified that the victim was nineteen years old at the time of his murder and that he had a deformity in his right arm that prevented its full use. Defense counsel objected on the ground that the [S]tate had not given prior notice of their intent to call Ms. Lee as a witness. The trial court overruled the objection.

The [S]tate next presented evidence to establish a motive for the murder. Officer Phillip Wright testified that during routine patrol on or about July 20, 1992, he was stopped by . . . [Petitioner] who reported that the victim, Luckett, had stolen his car. Officer Wright further testified that, when asked if he wanted to swear out a warrant against the victim, . . . [Petitioner] replied "not right now." Defense counsel objected to this testimony on the ground that . . . [Petitioner]'s statement to Officer Wright had not been disclosed prior to trial. Again, the trial court overruled the objection.

Next, the [S]tate called two eyewitnesses to the murder. The first, Rodriguez Lee, testified that . . . [Petitioner] had a twelve-gauge shotgun which came from Mr. Lee's house. Lee added that he saw . . . [Petitioner] remove the gun from a blue duffel bag. Lee stated that he saw . . . [Petitioner] chasing the victim on the night of the murder. He further

- 2 -

testified that the victim got stuck underneath a patio fence. Lee then stated that he heard the victim plead "[p]lease don't kill me." According to Lee, . . . [Petitioner] paid no heed to the victim's pleas for mercy. Instead, he fired point-blank into the victim's face. Marquis[e] Harris, another witness for the prosecution, also testified that he saw . . . [Petitioner] shoot the victim in the face.

Other witnesses corroborated this testimony. Steve Crawley testified that he saw . . . [Petitioner] three weeks prior to the murder carrying a shotgun. Crawley also testified that he witnessed . . . [Petitioner] on the night of the murder "acting shaky and nervous." Another witness, [Phedrek] Davis,[2] testified that he overheard . . . [Petitioner] state that "he was going to get" the victim for stealing . . . [Petitioner]'s car.

. . . [Petitioner] testified as a witness on his own behalf. . . . [Petitioner] denied any involvement in the murder, contending that he was at home with his girlfriend at the time of the shooting. . . . [Petitioner] did admit that, after the victim stole his car, he threatened to "get" the victim. On cross-examination, the [S]tate asked . . . [Petitioner] if, on the night of the shooting, he was in possession of a shotgun. . . . [Petitioner] responded that he was not. The [S]tate then inquired if all the other witnesses who testified that . . . [Petitioner] did have a shotgun around the time of the shooting were "lying." . . . [Petitioner] responded affirmatively.

At the close of the defense's case in chief, the [S]tate called Detective Bill Pridemore as a rebuttal witness. Prior to trial, [Detective] Pridemore had made a summary of statements given to him by Rodriguez Lee during questioning. The statements corroborated Lee's trial testimony. On direct examination, the [S]tate asked [Detective] Pridemore to recount his summary of these statements. Defense counsel objected on the ground that [Detective] Pridemore was a material witness, and thus, should not be permitted to testify as a rebuttal witness. The [S]tate argued that . . . [Petitioner] had "opened the door" when he testified on cross-examination that anyone who said he possessed a shotgun on the night of the murder was "lying." The trial judge overruled defense counsel's objection.

*Id.* at *1-2 (footnote added).

---

[2] We note that Mr. Davis' first name is spelled differently in the various opinions relating to Petitioner's case, as well as in this record. For purposes of clarity and consistency, we will utilize the spelling contained in the technical record of the current appeal—Phedrek.

Petitioner subsequently filed a petition for post-conviction relief, which the post-conviction court denied. *Cyrus Deville Wilson v. State*, No. 01C01-9811-CR-00448, 1999 WL 994054, at *4 (Tenn. Crim. App. Oct. 29, 1999). This court determined that it could not meaningfully review the post-conviction court's order because it lacked findings of fact and conclusions of law; thus, this court vacated the judgment and remanded for entry of a new order. *Id.* at *6. Thereafter, the post-conviction court entered a new order denying relief, which this court affirmed on appeal. *Cyrus D. Wilson v. State*, No. M2000-01237-CCA-R3-PC, 2001 WL 504910, at *1 (Tenn. Crim. App. May 14, 2001), *perm. app. denied* (Tenn. Sept. 17, 2001).

On August 25, 2009, Petitioner filed his first petition for writ of error coram nobis. *Wilson v. State*, 367 S.W.3d 229, 232 (Tenn. 2012). In his petition, he alleged that on August 26, 2008, he obtained a document created by the State on December 28, 1992, that stated, "[G]ood case but for most of [the witnesses] are juveniles who have already lied repeatedly." *Id.* at 232-33. The coram nobis court tolled the statute of limitations but summarily dismissed the petition because the note was the State's work product and was not subject to disclosure. *Id.* at 233. This court reversed and remanded for an evidentiary hearing on the merits because "the State had waived the statute of limitations as a defense because it did not raise the issue in the trial court[.]" *Id.*; *see also Cyrus Deville Wilson v. State*, No. M2009-02241-CCA-R3-CO, 2011 WL 1344519, at *2-3 (Tenn. Crim. App. Apr. 6, 2011), *perm. app. granted* (Tenn. Sept. 21, 2011).

After the Tennessee Supreme Court granted the State's application for permission to appeal under Tennessee Rule of Appellate Procedure 11, the court concluded that the coram nobis court did not err by tolling the statute of limitations in Petitioner's case. *Wilson*, 367 S.W.3d at 234. Additionally, the Tennessee Supreme Court concluded that the State's note was work product protected by Tennessee Rule of Criminal Procedure 16(a)(2). *Id.* at 236. Further, the court concluded that the note was opinion work product that was never discoverable and was inadmissible. *Id.* Thus, the supreme court concluded that the note was "not sufficient to support a petition for writ of error coram nobis[,]" reversed the judgment of this court, and reinstated the judgment of the coram nobis court. *Id.* at 236-37.

While Petitioner's first error coram nobis petition was pending, Rodriguez Lee, an eyewitness of the crime, recanted his trial testimony in an affidavit. *Cyrus Deville Wilson v. State*, No. M2013-01807-CCA-R3-CO, 2014 WL 3748573, at *3 (Tenn. Crim. App. July 30, 2014), *perm. app. denied* (Tenn. Dec. 17, 2014). Petitioner then filed his second petition for writ of error coram nobis. *Id.* After appointment of counsel, the coram nobis court tolled the statute of limitations and held a hearing. *Id.* The coram nobis court denied relief because "it was not reasonably well satisfied that the testimony at the

- 4 -

evidentiary hearing was true and that the testimony at trial was false" and because "other considerations would preclude coram nobis relief even if the witnesses were considered to be credible." *Id.* at *4. On appeal, this court affirmed the coram nobis court's denial of relief. *Id.*

On May 4, 2017, Petitioner filed the instant petition for writ of error coram nobis. In this petition, he asserted that the recanted testimony of Marquise Harris and Phedrek Davis constituted newly discovered evidence. The coram nobis court appointed counsel, who filed an amended petition.

At the coram nobis hearing on October 23, 2017, Mr. Harris testified that in 1992, police interviewed him prior to his testimony in Petitioner's trial. He asserted that, at the time he spoke with police, he did not know the victim. He explained that he testified to whatever Detective Pridemore and the prosecutor wanted him to say at Petitioner's trial. Mr. Harris stated that he lied when he testified that he saw Petitioner use a weapon to shoot the victim. He asserted that his affidavit was truthful. Mr. Harris explained that he sent a letter to Petitioner to apologize for testifying falsely at Petitioner's trial.

On cross-examination, the State asked Mr. Harris to describe the contents of his affidavit. Mr. Harris refused to do so until the coram nobis court instructed him twice to answer the question. Mr. Harris agreed that he was serving a sentence of twenty-three years for a conviction of attempted murder. He also agreed that he had previously been convicted of felony drug offenses and other violent offenses. Mr. Harris agreed that he was incarcerated at the same location as Mr. Davis. He also agreed that he was transferred with Petitioner and Mr. Davis to attend the coram nobis hearing. Mr. Harris testified that he had not spoken with Mr. Davis about Petitioner's case.

Mr. Harris explained that, one day after the offenses at issue, Detective Pridemore stopped him as he was leaving his apartment to go to school. Detective Pridemore asked Mr. Harris what his name was and where he lived. After Mr. Harris gave him the requested information, Detective Pridemore asked Mr. Harris if he knew Rodriquez Lee or Petitioner. Mr. Harris said that he did not. At the hearing, he explained that when he spoke with Detective Pridemore, he only knew Mr. Lee by the name of "Rod" and he did not know Petitioner.

When Detective Pridemore returned to Mr. Harris' residence a few days later, he told Mr. Harris that a witness had observed Mr. Harris "outside." Later, Detective Pridemore met with Mr. Harris' parents, who encouraged Mr. Harris to cooperate with the police in their investigation. Mr. Harris asserted that police forced him to testify falsely at Petitioner's trial. He stated that the law enforcement officers were "hollering

- 5 -

and yelling and grabbing" him. He testified that his family did not know about his involvement in Petitioner's case until Detective Pridemore returned to his residence.

On redirect examination, Mr. Harris asserted that Detective Pridemore and the prosecutor assigned to Petitioner's case threatened to arrest him if he did not testify against Petitioner. On recross-examination, Mr. Harris testified that he cooperated with police and testified against Petitioner because the police approached him. He asserted that he did not go to the police with any information.

Mr. Davis testified that he knew Petitioner in 1992. He asserted that police did not interview him prior to his testimony at Petitioner's trial. He stated that Detective Pridemore called him to inform him that he had been subpoenaed to appear at trial. When Mr. Davis arrived at the courthouse for Petitioner's trial, the prosecutor approached him with a newspaper clipping. The prosecutor told Mr. Davis that Petitioner had confessed to the crime and threatened to charge Mr. Davis with being an accessory to murder if he did not testify that Petitioner threatened the victim. Mr. Davis stated that his testimony at Petitioner's trial was untruthful. Mr. Davis asserted that the information contained in his affidavit was true.

On cross-examination, Mr. Davis stated that he had no prior knowledge that he was a witness in Petitioner's case until he appeared at the trial. He asserted that he did not speak with law enforcement about Petitioner's case because, at the time, he was housed at the Taft Youth Center. Mr. Davis testified that because he was incarcerated in the Taft Youth Center he did not hear Petitioner say that Petitioner was going to "get" the victim. On redirect examination, Mr. Davis agreed that he had never admitted that his trial testimony was false until he did so in his affidavit and his testimony at the coram nobis hearing. On recross-examination, Mr. Davis explained that he knew Petitioner because they lived in the same neighborhood; he also knew Mr. Lee and Mr. Harris. Mr. Davis did not know the victim. Mr. Davis agreed that he was currently incarcerated in the Tennessee Department of Correction serving a sentence of life plus fifteen years for a murder conviction. Additionally, Mr. Davis agreed that he had previously been convicted of drug offenses. Mr. Davis stated that, while he had been incarcerated in the Tennessee Department of Correction, he had not seen Petitioner.

Bill Pridemore testified that he worked for the Metro Nashville Police Department ("MNPD") for thirty-three years. Detective Pridemore stated that he investigated Petitioner's case. Prior to the death of the victim, Detective Pridemore did not know Mr. Harris. He met Mr. Harris around 8:30 a.m. on the morning of the victim's death at the crime scene when Mr. Harris walked by the crime scene "more than once." Detective Pridemore said hello to Mr. Harris and asked Mr. Harris "if he was familiar with what had happened . . . earlier in the night." Mr. Harris told Detective Pridemore that he knew

what happened and that he saw the murder. Detective Pridemore asked if Mr. Harris would speak with him, but Mr. Harris declined because "he wanted to get the Crime Stopper money." After Detective Pridemore informed Mr. Harris that he would receive the money, Mr. Harris gave Detective Pridemore details of the murder while they were at the crime scene. Detective Pridemore stated that Mr. Harris gave him details about the murder that were not public knowledge.

Mr. Harris later gave a statement to police and applied for the Crime Stopper reward. Detective Pridemore asserted that Mr. Harris gave the "code" for the reward to a friend. Detective Pridemore received a call that "someone was trying to meet and collect the Crime Stopper money[.]" Detective Pridemore met with Mr. Harris' friend, who collected the reward. Detective Pridemore testified that he did not threaten Mr. Harris with charges or incarceration to obtain his testimony at Petitioner's trial. Detective Pridemore did not remember interviewing Mr. Davis. He was not aware of any threats made towards Mr. Davis to obtain his testimony at trial.

The coram nobis court denied the petition on May 25, 2018, in a written order. The coram nobis court found that Mr. Harris' trial testimony contradicted his assertion in his affidavit that he had been coerced into testifying by Detective Pridemore "on a number of levels for which his recantation does not account." The coram nobis court noted that, at trial, Mr. Harris testified that he knew the victim and Petitioner, that he was friends with Petitioner, that he and Petitioner discussed the victim's theft of Petitioner's car. Additionally, Mr. Harris testified that Petitioner was upset and crying over his stolen car and that he created a plan to "get" the victim. Mr. Harris also testified about the clothing that Petitioner wore during the offense. The coram nobis court explicitly credited Detective Pridemore's testimony at the hearing that "Mr. Harris was lingering at the scene but would not talk with police without a guarantee of the [C]rime[ S]topper reward money." The coram nobis court concluded that, based on Mr. Harris' extensive and detailed trial testimony, it was not credible that "Detective Pridemore fabricated not only what Mr. Harris could have seen from his window, but an entire relationship and multiple interactions with . . . . [P]etitioner and knowledge of and friendship with multiple other witnesses and parties." The coram nobis court found that Mr. Harris' testimony at the coram nobis court was not credible because Mr. Harris would not testify regarding the contents of his affidavit until the coram nobis court directed him to answer the State's questions. The coram nobis court noted that, when Mr. Harris answered the State's questions about his affidavit, he "provided only a small portion of the story contained therein."

The coram nobis court found that Mr. Davis also testified at the hearing that he had been coerced by law enforcement to testify against Petitioner. The court found that Mr. Davis alleged that law enforcement fabricated his testimony from a newspaper

article. Additionally, Mr. Davis alleged that "he was given nothing but notification of a subpoena and then commanded to testify on pain of prosecution without ever having been interviewed and with no knowledge of the incident or the parties." The coram nobis court found that, at trial, Mr. Davis testified to information that he could not have obtained from a newspaper article. More specifically, Mr. Davis testified at trial that he knew Petitioner and the victim, that he was aware that the victim stole Petitioner's car, and that Petitioner had told Mr. Davis that Petitioner was going to "get" the victim. The coram nobis court found that it was incredible that "an attorney would make such a blatantly unethical decision on the morning of trial just to get the cumulative testimony that . . . [P]etitioner was upset about his car being stolen and that he would 'get' the [victim]." The coram nobis court noted that Petitioner did not deny knowing Mr. Davis at trial and that Mr. Davis had been convicted of murder and had been incarcerated since 2005. The coram nobis court found that Mr. Davis' testimony at the coram nobis hearing was not reliable. Thus, the coram nobis court concluded that it was "not reasonably well satisfied that the trial testimony was false and that the testimony presented at the evidentiary hearing is true."

Despite denying Petitioner's petition for a writ of error coram nobis on the ground that it was not satisfied that Mr. Harris' and Mr. Davis' trial testimony was false and that their testimony at the hearing was true, the coram nobis court also addressed the second factor of the test from *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999). The coram nobis court found that Mr. Davis' inculpatory trial testimony that Petitioner was upset that the victim stole his car and that Petitioner stated he was going to "get" the victim was cumulative. The coram nobis court concluded that "Mr. Davis' testimony that he knew nothing at all about the incident could not have, in the judgment of [the coram nobis court], had an effect on the jury."

Petitioner now timely appeals the coram nobis court's denial of relief.

## II. Analysis

*Timeliness of the petition*

Petitioner concedes that he did not timely file his petition within one year of the date that his judgment of conviction became final in the trial court. However, he asserts that "neither the State[] nor the trial court made an argument as to the timeliness of the petition."

Petitions for writ of error coram nobis are subject to a one-year statute of limitations. Tenn. Code Ann. § 27-7-103. "The statute of limitations is computed from the date the judgment of the trial court becomes final, either thirty days after its entry in

the trial court if no post-trial motions are filed or upon entry of an order disposing of a timely filed, post-trial motion." *Harris v. State*, 301 S.W.3d 141, 144 (Tenn. 2010) (citing *Mixon*, 983 S.W.2d at 670), *overruled on other grounds by Nunley v. State*, 552 S.W.3d 800, 828 (Tenn. 2018). Calculating the statute of limitations in this manner is consistent with the "longstanding rule that persons seeking relief under the writ must exercise due diligence in presenting the claim." *Mixon*, 983 S.W.2d at 670; *see also Harris*, 301 S.W.3d at 144.

Recently, our supreme court determined that "compliance with the timely filing requirement . . . is an essential element of a coram nobis claim." *Nunley*, 552 S.W.3d at 828. However, a petitioner can request equitable tolling of the limitations period. *Id.* To determine whether due process requires tolling, courts must balance the State's interest in preventing "stale and groundless" claims against the petitioner's interest in having a hearing to present newly discovered evidence which may have led the jury to a different verdict if it had been presented at trial. *Workman v. State*, 41 S.W.3d 100, 103 (Tenn. 2001). To balance these interests, courts should use a three-step analysis:

> (1) determine when the limitations period would normally have begun to run; (2) determine whether the ground for relief actually arose after the limitations period would normally have commenced; and (3) if the grounds are "later-arising," determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim.

*Sands v. State*, 903 S.W.2d 297, 301 (Tenn. 1995); *see also Harris*, 301 S.W.3d at 145. Likewise, "the coram nobis petition must be filed within a time period that 'does not exceed the reasonable opportunity afforded by due process.'" *Nunley*, 552 S.W.3d at 830 (quoting *Sample v. State*, 82 S.W.3d 267, 275 (Tenn. 2002)); *see Workman*, 41 S.W.3d at 103. Whether due process considerations require tolling the statute of limitations is a mixed question of law and fact, which we review de novo with no presumption of correctness. *Harris*, 301 S.W.3d at 144 (citing *Brown v. Erachem Comilog, Inc.*, 231 S.W.3d 918, 921 (Tenn. 2007)).

As noted above, Petitioner concedes that he did not file his petition within one year of his judgment of conviction becoming final. Mr. Harris swore to his affidavit on January 31, 2017. Mr. Davis swore to his affidavit on March 22, 2017. Petitioner notarized his petition on April 24, 2017.[3] Petitioner filed an amended petition on July 24, 2017. Because Petitioner's grounds for relief arose after the statute of limitations expired and because "under the facts of the case, a strict application of the limitations period

---

[3] The petition does not contain a file stamped date.

would effectively deny . . . [P]etitioner a reasonable opportunity to present the claim[,]" *see Sands*, 903 S.W.2d at 301, we conclude that the coram nobis court properly tolled the statute of limitations in the interest of justice.

*Standard of Review*

A writ of error coram nobis is an "extraordinary procedural remedy," filling only a "slight gap into which few cases fall." *Mixon*, 983 S.W.2d at 672 (internal citation omitted). Tennessee Code Annotated section 40-26-105(b) provides that coram nobis relief is available in criminal cases as follows:

> The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

Tenn. Code Ann. § 40-26-105(b).

Unlike the grounds for reopening a post-conviction petition, the grounds for seeking a petition for writ of error coram nobis are not limited to specific categories. *See Harris v. State*, 102 S.W.3d 587, 592 (Tenn. 2003), *overruled on other grounds by Nunley*, 552 S.W.3d at 828. "Coram nobis claims may be based upon any 'newly discovered evidence relating to matters litigated at the trial' so long as the petitioner establishes that he or she was 'without fault' in failing to present the evidence at the proper time." *Harris*, 102 S.W.3d at 592-93. Coram nobis claims are "singularly fact-intensive," are not easily resolved on the face of the petition, and often require a hearing. *Id.* at 593.

Recanted testimony may qualify as newly-discovered evidence if:

(1) the trial court is reasonably well satisfied that the testimony given by the material witness was false and the new testimony is true; (2) the defendant was reasonably diligent in discovering the new evidence, or was surprised by the false testimony, or was unable to know of the falsity of the

- 10 -

testimony until after the trial; and (3) the jury might have reached a different conclusion had the truth been told.

*State v. Vasques*, 221 S.W.3d 514, 525 (Tenn. 2007) (quoting *Mixon*, 983 S.W.2d at 673 n.17). In determining whether the new information may have led to a different result, the question before the court is "whether a reasonable basis exists for concluding that had the evidence been presented at trial, the results of the proceedings might have been different." *Id.* (citing *State v. Roberto Vasques et al*, No. M2004-00166-CCA-R3-CD, 2005 WL 2477530, at *13 (Tenn. Crim. App. Oct. 7, 2005)). The decision to grant or deny coram nobis relief rests within the sound discretion of the trial court. *Vasques*, 221 S.W.3d at 527-28.

*Recantation of juvenile witnesses*

On appeal, Petitioner argues that the coram nobis court erred in denying his petition because the trial court incorrectly assessed the credibility of Mr. Harris' and Mr. Davis' recantation testimony. The State responds that Petitioner "has failed to show that the trial court's ruling—and the credibility finding within it—amounts to an abuse of discretion."

In the current case, the coram nobis court credited Mr. Harris' and Mr. Davis' trial testimony as truthful and found that their testimony at the coram nobis hearing was not credible. Additionally, the coram nobis court credited Detective Pridemore's testimony at the hearing. The coram nobis court concluded that it was "not reasonably well satisfied that the trial testimony was false and that the testimony presented at the evidentiary hearing is true." Petitioner essentially asks this court to ignore the coram nobis court's credibility determinations and to reweigh the evidence. This court cannot "second guess the trial court's evaluation of the witnesses' credibility." *Newsome v. State*, 995 S.W.2d 129, 135 (Tenn. Crim. App. 1998).

Further, the coram nobis court properly exercised its discretion by concluding that the recantation testimony was false and that Mr. Harris and Mr. Davis testified truthfully at trial. At Petitioner's trial, Mr. Harris testified that he knew both the victim and Petitioner, that he spoke with Petitioner about the stolen vehicle and the plan to "get" the victim, and that Petitioner was so upset about his stolen vehicle that he was crying. Mr. Davis testified at trial that he knew Petitioner and the victim, that he was aware that the victim stole Petitioner's car, and that Petitioner had told Mr. Davis that Petitioner was going to "get" the victim. As the coram nobis court found, the scope of Mr. Harris' and Mr. Davis' trial testimony exceeded the scope of the information that they were allegedly coerced into testifying about at Petitioner's trial. The coram nobis court also credited Detective Pridemore's testimony that Mr. Harris would not speak with him about the

victim's murder until Detective Pridemore promised that Mr. Harris would receive a reward from Crime Stoppers. This testimony accredited by the coram nobis court directly contradicts Mr. Harris' testimony at the hearing.

Additionally, the coram nobis court concluded that Mr. Davis' inculpatory trial testimony that Petitioner was upset that the victim stole his car and that Petitioner stated he was going to "get" the victim was cumulative. The coram nobis court also concluded that "Mr. Davis' testimony that he knew nothing at all about the incident could not have, in the judgment of [the coram nobis court], had an effect on the jury." The coram nobis court did not abuse its discretion by denying relief on this ground. As the Tennessee Supreme Court has stated, "Newly-discovered evidence that is merely cumulative or serves no other purpose than to contradict or impeach does not warrant coram nobis relief." *State v. Hall*, 461 S.W.3d 469, 495 (Tenn. 2015) (internal quotation marks omitted) (quoting *Wlodarz v. State*, 361 S.W.3d 490, 499 (Tenn. 2012)). Thus, Petitioner is not entitled to coram nobis relief on this ground.

*Crime Stopper reward*

Petitioner concedes that he did not argue in his coram nobis petition that Detective Pridemore's testimony regarding the Crime Stopper reward payment to Mr. Harris was newly discovered evidence. However, Petitioner asserts that this court should grant plain error relief. The State responds that plain error relief is not generally applicable in collateral proceedings. Further, the State argues that, even if plain error is applicable to collateral proceedings, it is not warranted here because Petitioner does not assert that the coram nobis court erred. In his reply brief, Petitioner explains that he did not include this ground in his coram nobis petition because "he could not predict what Detective Pridemore might say if called as a witness." Petitioner also argues that this court should distinguish his case from the facts in *Grindstaff v. State*, 297 S.W.3d 208, 218-19 (Tenn. 2009), and should grant plain error relief.

Tennessee appellate courts have previously concluded that plain error relief is not available in post-conviction proceedings to claims that are waived or previously determined. *See Grindstaff*, 297 S.W.3d at 219; *State v. West*, 19 S.W.3d 753, 756-57 (Tenn. 2000); *Charles Pennington v. State*, No. W2017-01596-CCA-R3-PC, 2019 WL 337375, at *5 (Tenn. Crim. App. Jan. 25, 2019), *perm. app. denied* (Tenn. May 17, 2019); *Randall Turner v. State*, No. E2018-00520-CCA-R3-PC, 2018 WL 6253822, at *5 (Tenn. Crim. App. Nov. 28, 2018), *no perm. app. filed*; *Calvin Otis Tankesly v. State*, No. M2005-02008-CCA-R3-PC, 2007 WL 1890208, at *5 (Tenn. Crim. App. June 28, 2007), *no perm. app. filed*; *Marcus E. Thompson v. State*, No. E2004-03028-CCA-R3-PC, 2006 WL 36907, at *12 (Tenn. Crim. App. Jan. 4, 2006), *perm. app. dismissed* (Tenn. Apr. 10, 2006); *Corwyn E. Winfield v. State*, No. W2003-00889-CCA-R3-PC, 2003 WL

22922272, at *5 (Tenn. Crim. App. Dec. 10, 2003), *perm. app. denied* (Tenn. May 10, 2004).

Whether the plain error doctrine is applicable to error coram nobis proceedings is an issue of first impression for this court. However, in *West*, the Tennessee Supreme Court recognized that the judicial system is "charged to provide a post-conviction forum in which those convicted of crimes may raise legitimate claims within a meaningful time and manner," but that charge must be balanced with "the need for finality of judgments." *West*, 19 S.W.3d at 757. Further, while the court below addressed Detective Pridemore's testimony regarding the Crime Stopper payment, the court did so in the context of determining the credibility of witness testimony and did not determine whether Detective Pridemore's testimony was newly-discovered evidence that may have had an effect on the outcome of Petitioner's trial. Because we have no findings of fact or conclusions of law regarding this ground for relief, we cannot address the merits of Petitioner's argument. *See Walsh v. State*, 166 S.W.3d 641, 645 (Tenn. 2005) ("Issues not addressed in the [trial] court will generally not be addressed on appeal."); *Rickman v. State*, 972 S.W.2d 687, 691 (Tenn. Crim. App. 1997) (appellate courts generally cannot address issues "that were not raised in the petition or addressed in the post-conviction court"); *State v. Adkisson*, 899 S.W.2d 626, 635 (Tenn. Crim. App. 1994) ("[A] party will not be permitted to assert an issue for the first time in the appellate court."). Therefore, we will apply the precedent set by this court and the Tennessee Supreme Court in post-conviction cases to error coram nobis petitions and conclude that the plain error doctrine is not applicable to appeals from the denial of a petition for a writ of error coram nobis to claims that are waived for failure to present the claim to the coram nobis court. We conclude that Petitioner waived review of this issue by failing to present it to the coram nobis court.

## III. Conclusion

For the aforementioned reasons, the judgment of the coram nobis court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE