IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
November 1, 2022 Session

**ANDRE BOWEN v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 18-01853      Lee V. Coffee, Judge**

———————————————————

**No. W2022-00229-CCA-R3-ECN**

———————————————————

Andre Bowen, Petitioner, claims that the trial court erred by summarily dismissing his Petition for Writ of Error Coram Nobis.  Discerning no error, we affirm the dismissal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which J. ROSS DYER and KYLE A. HIXSON, JJ., joined.

Phyllis Aluko, District Public Defender; and Barry W. Kuhn (on appeal) and Samuel Christian (at hearing) Assistant District Public Defenders, for the appellant, Andre Bowen.

Jonathan Skrmetti, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Steve Mulroy, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Petitioner and his Co-defendant, Anthony Olivo, were charged with first degree felony murder in the perpetration of theft, first degree felony murder in the perpetration of robbery, attempted especially aggravated robbery, and convicted felon in possession of a firearm.  *See State v. Andre Bowen*, No. W2019-01210-CCA-R3-CD, 2021 WL 1400929, at *1 (Tenn. Crim. App. Apr. 13, 2021), *perm. app. denied* (Tenn. June 15, 2021); *State v. Anthony Olivo*, No. W2019-00530-CCA-R3-CD, 2020 WL 2510533, at *1 (Tenn. Crim. App. May 15, 2020), *perm. app. denied* (Tenn. Sept. 21, 2020).  Following a joint trial, the jury convicted Mr. Olivo as charged, and the trial court sentenced him to a total effective sentence of life plus twenty years.  *Anthony Olivo*, 2020 WL 2510533, at *1.  The jury

convicted Petitioner as charged, except with respect to the murder charges for which it convicted him of the lesser-included offense of facilitation of first degree murder in the perpetration of robbery and acquitted him of the charge of first degree felony murder in the perpetration of theft, and the trial court sentenced Petitioner to a total effective sentence of seventy-two years. *Andre Bowen*, 2021 WL 1400929, at *1, *5. Neither Petitioner nor Mr. Olivo testified at the trial.

## Petitioner's Direct Appeal

The following excerpts are quoted from this court's opinion from Petitioner's direct appeal:

[S]hortly after 6:00 a.m. on August 1, 2015, the defendants were driving in [Mr.] Olivo's grey Lexus looking for a license plate to steal because Co-defendant Olivo's temporary tag had expired when they saw the victim withdraw cash from a bank. The defendants then decided to rob the victim and followed her in the Lexus. When the victim parked in the driveway of her neighbor, Jane Rezos, [Mr.] Olivo exited the Lexus armed with a gun, approached the victim, and attempted to rob her. A struggle ensued after the victim produced her own weapon, and [Mr.] Olivo shot the victim in the head. [Mr.] Olivo returned to the Lexus, and the defendants fled the scene.

. . . .

[Mr.] Olivo provided a statement to law enforcement after his arrest on August 14, 2015, which implicated [Petitioner] in the crimes. [Memphis Police Department ("MPD")] Officer [Brad] Webb obtained a statement from [Petitioner] on August 15, 2015. An advice of rights form, which was signed by [Petitioner], and a redacted version of [Petitioner]'s statement were entered into evidence, a copy of which was provided to the jury and read by Officer Webb. In the statement, [Petitioner] denied being responsible for the victim's death but stated he knew who was responsible. He also stated he heard the gunshot that killed the victim. [Petitioner] explained that on the morning of the murder, he and [Mr.] Olivo were driving a dark grey Lexus and planned to steal a car tag. [Petitioner] denied seeing the victim anywhere prior to the shooting and denied that he and [Mr.] Olivo planned to rob the victim. Furthermore, [Petitioner] stated he never saw the victim as he remained in the front passenger's seat during the shooting. [Petitioner] explained as follows:

- 2 -

Me and [Mr. Olivo] were just riding around, and, within a minute or two, I heard a lady holler, but the windows were up, and I can't say what she said. Then I heard a shot, and looked back, and saw [Mr. Olivo] running back to the car.

[Petitioner] denied having a weapon but mentioned seeing a small, black handgun that day and stated no one else was with him and [Mr.] Olivo at the time of the shooting. [Petitioner] also noted [Mr.] Olivo had a cut on his forehead. A photograph of [Mr.] Olivo, as identified by [Petitioner], was entered into evidence showing where [Petitioner] marked an injury to [Mr.] Olivo's forehead and wrote, "That's the place he was bleeding from."

MPD Lieutenant Robert Wilkie testified regarding the statement provided by [Mr.] Olivo on August 14, 2015. A copy of the advice of rights form signed by [Mr.] Olivo and a redacted version of his statement were entered into evidence and read to the jury by Lieutenant Wilkie. In the statement, [Mr.] Olivo denied seeing the victim prior to August 1, 2015, denied planning to rob the victim, denied shooting the victim, and denied being armed during the shooting though he admitted to seeing a black, automatic handgun. [Mr.] Olivo admitted that prior to the crimes, he was searching for a car tag because his temporary tag had expired, he was present during the shooting but did not exit his vehicle, and he was sorry for what happened to the victim. [Mr.] Olivo explained the shooting in further detail, as follows:

Me and [Petitioner] were just riding around, and we were looking to find a Lexus to steal the tag off of and put on my car. I just turned on a street, and then I seen a car on my right side. I stopped in the street, and she was straight across the street near her truck, and she hollered to get away from the car. I seen her in her purse, and it looked like she was trying to get something. And that's when she pulled out a gun and shot once, and we pulled off. I turned around at the end of the street and went to south Memphis and dropped [Petitioner] off near Pond Street, and then I went home to my mom's.

*Id*. at *1-3.

Petitioner was questioned on August 15, 2015, by Officer Webb and MPD Sergeant Tess Kent. Petitioner's interview, redacted so as to not implicate Mr. Olivo, was read to the jury and entered as Exhibit 39. The Petitioner's unredacted interview was entered for

identification as Exhibit 39A. The following is a portion of the exchange between Sergeant Kent and Petitioner:[1]

Q. Exactly where were you when the shooting occurred?

A. Sitting in the car. Front passenger seat. The car was parked a little past where I heard the shot come from. Then I heard the shot I looked back a little over my left shoulder and saw [Mr. Olivo] running to the car.

. . . .

Q. In your own words tell me what happened before, during, and after the shooting.

A. Me and [Mr. Olivo] were just riding around, *and, he was looking to find a Lexus to steal the tag off and put on his car. [Mr. Olivo] pulled over and stopped and then took the gun out of the glove box [and] got out of the car. He walked away from the car* and within a minute or two I heard a lady holler, but the window[s] were up and I can't say what she said, then I heard a shot and looked back and saw [Mr. Olivo] running back to the car.

Q. Was there any talk of robbing anyone?

A. No sir.

Q. Was there a plan of stealing a tag?

A. Yes.

**Writ of Error Coram Nobis**

Petitioner has been represented by attorneys from the Shelby County Public Defender's office at trial, on appeal, and in this proceeding. Assistant Public Defender Sam Christian, who was one of Petitioner's trial counsels, filed a Petition for Writ of Error Coram Nobis ("the Petition") on March 24, 2021, claiming that Petitioner had discovered new evidence that was not available or discoverable before his trial and that this evidence may lead to an acquittal of the charges. The Petition claimed that Mr. Christian first

---

[1] Because one issue in this appeal is whether the proffered post-trial statements of Mr. Olivo— to the effect that Petitioner was asleep in the car when the victim was murdered—are credible, we have included the unredacted response of Petitioner, with the part redacted from Petitioner's answer and not read to the jury italicized.

became aware of possible evidence in August of 2020 when Petitioner told him that Petitioner had talked by phone with Mr. Olivo and that Mr. Olivo told Petitioner that he had made statements at his sentencing hearing that might aid Petitioner. Mr. Christian asked to speak with Mr. Olivo, but Mr. Olivo's counsel would not permit him to speak to Mr. Olivo while Mr. Olivo's appeal was pending. The Tennessee Supreme Court denied Mr. Olivo's Rule 11 Application on September 21, 2020.

In an affidavit attached to the Petition, Kathleen Duckett, an investigator with the Shelby County Public Defender's Office, affirmed that she was on a telephone conference call with Mr. Olivo, Mr. Christian, and Assistant Public Defender Barry Kuhn on November 12, 2020. According to Ms. Duckett's affidavit, Mr. Olivo stated that, during his sentencing hearing, he "told the court that Petitioner did not know anything about the situation until after the fact" and that Petitioner "was asleep in the car and did not know what happened." He said that he and Petitioner "had been driving around all night 'getting blazed' and doing drugs" and that Petitioner "fell asleep in the early morning hours" and that he "continued to drive around for forty-five minutes after [Petitioner] fell asleep before anything happened."

Also attached to the Petition was the portion of Mr. Olivo's sentencing hearing transcript containing Mr. Olivo's allocution, during which he stated that he would "like to apologize to [Petitioner] for him being charged with something that he had no knowledge of what was going on or what happened till after the fact."

On April 16, 2021, Petitioner filed, as an addendum to the Petition, the affidavit of Mr. Olivo, which stated:

> [Petitioner] was in the car with me during the events which occurred August 1, 2015, but he was asleep. He was not aware of anything that occurred. He had taken a Xanax tablet and was asleep. He had gone to sleep forty-five minutes to an hour during the drive. I was about to take him home[, and] my wife called and wanted something from the store[.] [Petitioner] was asleep the whole time. I made a stop at the store, went to my house, left[,] made a detour[,] when I got out the car he was asleep, but when [I] got back in the car he was up hollering at me asking me what's going on and I told him while [I] was dropping him off. I wanted to testify during trial, but I asked my lawyer several times and he told me not to testify that it wouldn't be in my best interest [i]f I wanted a chance to win the trial. I just wanted to do what was right.

On December 1, 2021, the State filed a response asking that the Petition be summarily dismissed because the information alleged in the Petition was not newly

discovered evidence and that the Petition was not timely filed. On January 20, 2022, the trial court summarily dismissed the Petition by written order, in which the court found:

> The allegations raised in the Writ of Error Coram Nobis should have been raised on direct appeal. The evidence is not newly discovered and has been in possession of . . . [P]etitioner since at least April 12, 2019. The unsworn statements made by Mr. Olivo during an allocution at his sentencing hearing were made on March 8, 2019. [Petitioner's] sentencing hearing took place one month later on April 12, 2019. The allocution made by Mr. Olivo is not newly discovered evidence.
>
> This information has been available since at least March 8, 2019. This information was known to all parties at . . . Petitioner's sentencing hearing. During . . . Petitioner's sentencing hearing, the trial court discussed the allocution made by Mr. Olivo at the earlier hearing in which Mr. Olivo asserted that . . . Petitioner was not involved in this offense (see-attached transcript of proceedings [held on] Friday, April 12, 2019, Page 37 beginning at line 21). This petition was filed untimely. Even if April 12, 2019[,] is accepted as the date when the information regarding Mr. Olivo's allocution was known to . . . Petitioner, this petition for error coram nobis was filed two years later on March 23, 2021. Petitioner has willfully filed a document that is void of any truth. This Petitioner has filed an absolutely false pleading in this case.

On February 23, 2022, Petitioner filed a notice of appeal.

**Analysis**

Petitioner claims that the trial court erred by summarily dismissing the Petition, arguing that he was without fault in failing to present certain evidence at trial, that the evidence was newly discovered, and that the evidence may result in a different verdict if admitted during a new trial. Petitioner acknowledges that the Petition was not filed before the expiration of the one-year statute of limitations but argues that statute should be tolled because its application denies him due process. The State argues that the trial court properly dismissed the Petition. We agree with the State. Mr. Olivo's statements that Petitioner was asleep in the car when the victim was murdered are not newly discovered evidence, and the statements lack veracity, as found by the trial court.

The writ of error coram nobis, codified in Tennessee Code Annotated section 40-26-105 for criminal cases, is "an *extraordinary* procedural remedy," providing relief in only a limited number of cases. *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999)

(emphasis in original). The petition for writ of error coram nobis must be in writing and must describe with particularity the nature and substance of the newly discovered evidence and demonstrate that the evidence qualifies as newly discovered evidence. *Harris v. State,* 301 S.W.3d 141, 144 (Tenn. 2010), *overruled on other grounds by State v. Nunley*, 552 S.W.3d 800, 828 (Tenn. 2018). "[T]o be considered 'newly discovered evidence,' the proffered evidence must be (a) evidence of facts existing, but not yet ascertained, at the time of the original trial, (b) admissible, and (c) credible." *Id*. (footnotes omitted). Petitioner must also show "why the newly discovered evidence could not have been discovered in a more timely manner with the exercise of reasonable diligence; and . . . how the newly discovered evidence, had it been admitted at trial, may have resulted in a different judgment." *Id.* (footnotes omitted). Before granting coram nobis relief, the trial court must be "reasonably well satisfied" with the veracity of the proffered evidence. *State v. Vasques*, 221 S.W.3d 514, 527 (Tenn. 2007).

Petitions for writ of error coram nobis are subject to a one-year statute of limitations. Tenn. Code Ann. § 27-7-103 (2020). "The statute of limitations is computed from the date the judgment of the trial court becomes final, either thirty days after its entry in the trial court if no post-trial motions are filed or upon entry of an order disposing of a timely filed, post-trial motion." *Harris*, 301 S.W.3d at 144 (citing *Mixon*, 983 S.W.2d at 670). Calculating the statute of limitations in this manner is consistent with the "longstanding rule that persons seeking relief under the writ must exercise due diligence in presenting the claim." *Mixon*, 983 S.W.2d at 670; *see also Harris*, 301 S.W.3d at 144.

Our supreme court has determined that "compliance with the timely filing requirement . . . is an essential element of a coram nobis claim." *Nunley*, 552 S.W.3d at 828. However, a petitioner can request equitable tolling of the limitations period. *Id*. To determine whether due process requires tolling, courts must balance the State's interest in preventing "stale and groundless" claims against the petitioner's interest in having a hearing to present newly discovered evidence which may have led the jury to a different verdict if it had been presented at trial. *Workman v. State*, 41 S.W.3d 100, 103 (Tenn. 2001). To balance these interests, courts should use a three-step analysis:

> (1) determine when the limitations period would normally have begun to run; (2) determine whether the ground for relief actually arose after the limitations period would normally have commenced; and (3) if the grounds are "later-arising," determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim.

*Sands v. State*, 903 S.W.2d 297, 301 (Tenn. 1995); *see also Harris*, 301 S.W.3d at 145. Likewise, "the coram nobis petition must be filed within a time period that 'does not exceed

- 7 -

the reasonable opportunity afforded by due process.'" *Nunley*, 552 S.W.3d at 830 (quoting *Sample v. State*, 82 S.W.3d 267, 275 (Tenn. 2002)); *see Workman*, 41 S.W.3d at 103. Whether due process considerations require tolling the statute of limitations is a mixed question of law and fact, which we review de novo with no presumption of correctness. *Harris*, 301 S.W.3d at 144 (citing *Brown v. Erachem Comilog, Inc.*, 231 S.W.3d 918, 921 (Tenn. 2007)).

After a review of the record, we determine that the Petition was not timely filed and that due process considerations do not warrant the tolling of the statute of limitations. Petitioner's grounds for relief are not "later-arising," and thus, a strict application of the limitations period would not effectively deny Petitioner a reasonable opportunity to present his claim. *See Sands*, 903 S.W.2d at 301.

Even if the Petition were timely, Mr. Olivo's proffered testimony is not newly discovered evidence. *Harris*, 301 S.W.3d at 144. Petitioner argues that Mr. Olivo is now prepared to testify that Petitioner was asleep in the car when the victim was murdered and that, therefore, Petitioner was not responsible for what occurred. Petitioner claims that Mr. Olivo's statements constitute newly discovered evidence. Petitioner is the one person who would have known if he were asleep in the car when the victim was murdered, and he would have known this information prior to his trial. If he had in fact been asleep, he could have so testified. The only thing that is newly discovered is that Mr. Olivo, after being sentenced to life plus twenty years and exhausting his appeal, now appears willing to testify.

Furthermore, the trial court found that Petitioner had "willfully filed a document that is void of any truth" and that Petitioner had filed "an absolutely false pleading in this case." The record fully supports the trial court's credibility findings. Both Petitioner and Mr. Olivo gave statements to the police before trial that contradict the proffered statements by Mr. Olivo that Petitioner was asleep when the murder occurred. Mr. Olivo stated that he and Petitioner were riding around looking for a car tag to steal. Neither Mr. Olivo nor Petitioner told the police that Petitioner was asleep.

Petitioner told Sergeant Webb and Sergeant Kent that:

Me and [Mr. Olivo] were just riding around, and [Mr. Olivo] was looking to find a Lexus to steal the tag off and put on his car. [Mr. Olivo] pulled over and stopped and then took the gun out of the glove box [and] got out of the car. He walked away from the car and within a minute or two I heard a lady holler, but the window[s] were up and I can't say what she said, then I heard a shot and looked back and saw [Mr. Olivo] running back to the car.

If Petitioner were in fact asleep when the victim was killed, he could not have known that Mr. Olivo "pulled over and stopped and then took the gun out of the glove box [and] got out of the car" and that he "walked away from the car and within a minute or two [he] heard a lady holler[.]" Petitioner also told Sergeant Webb and Sergeant Kent that he was "[s]itting in the car. Front passenger seat. The car was parked a little past where I heard the shot come from. Then I heard the shot I looked back a little over my left shoulder and saw [Mr. Olivo] running to the car." Petitioner could not have known what occurred before, during, and after the victim was murdered if he were asleep in the car when it occurred. Because the proffered evidence—Mr. Olivo's statements that Petitioner was asleep when the murder occurred and did not know what happened—is not credible, it does not constitute "newly discovered evidence" for purposes of a writ of error coram nobis. *See id.*; *Vasques*, 221 S.W.3d at 527.

**Conclusion**

We affirm the trial court's summary dismissal of the Petition.

_____
ROBERT L. HOLLOWAY, JR., JUDGE